**COMMONWEALTH of Pennsylvania**

v.

**John W. GEORGE, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1997.

Filed Jan. 13, 1998.

Joseph P. Burt, Erie, for appellant.

Damon C. Hopkins, Asst. Dist. Atty., Erie, for Com., appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence, as made final by the denial of appellant's post-sentencing motions,[1] entered following appellant's convictions for robbery,[2]

---

1. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 16, 658 A.2d 395, 397 (1995), *appeal quashed,* 543 Pa. 6, 669 A.2d 877 (1995) and Pa.R.Crim.P., Rule 1410 A(2), 42 Pa.C.S.A. and comment thereto (judgment of sentence becomes final for appeal purposes on the date when the court disposes of the defendant's post-sentencing motion, or when the motion is denied by operation of law).

2. 18 Pa.C.S.A. § 3701(a)(1).

criminal conspiracy,[3] unlawful restraint,[4] terroristic threats,[5] simple assault[6] and robbery of a motor vehicle.[7] The sole issue presented for our review is whether the evidence is sufficient to sustain appellant's conviction for robbery of a motor vehicle. For the reasons set forth below, we affirm the judgment of sentence.

Before addressing the merits of appellant's claim, we will briefly recount the pertinent facts of this case. On June 29, 1996, appellant, John George, and an accomplice, Nicole Kirby entered the vehicle of the victim, Thomas Black, and forced him to relinquish various items of personal property at gunpoint. Appellant further struck Black in the head and forced him to drive to various locations in Erie before the victim managed to escape at a convenience store. Appellant and his companion then fled from the scene in the victim's car. Appellant was subsequently arrested and charged with various offenses arising out of this incident.[8]

Appellant was convicted of the above offenses following a jury trial in December of 1996. Appellant was sentenced on January 8, 1997 to an aggregate term of seven (7) to twenty (20) years' incarceration.[9] Appellant timely filed post-sentencing motions which were denied by the trial court. Appellant timely appealed.

■ Appellant challenges the sufficiency of the evidence relating to his robbery of a motor vehicle conviction.

In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted). We will evaluate the evidence in accordance with this standard.

A person commits the crime of robbery of a motor vehicle if "he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa. C.S.A. § 3702(a). The instant case presents the first occasion for the appellate courts to interpret and apply this statute. In doing so, we are mindful of the principles governing statutory construction. Specifically, our object is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). When the words of a statute are not explicit, we may ascertain the General Assembly's intention by considering, among other matters: (1) the occasion and necessity of the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; and (5) the contemporaneous legislative history of the statute. *Id.,* § 1921(c). We may also

---

3. 18 Pa.C.S.A. § 903(a).

4. 18 Pa.C.S.A. § 2902(a).

5. 18 Pa.C.S.A. § 2706.

6. 18 Pa.C.S.A. § 2701(a)(1).

7. 18 Pa.C.S.A. § 3702(a).

8. Ms. Kirby later separated from appellant and was arrested in Erie. She subsequently pled guilty to charges that are not relevant to the instant appeal.

9. Appellant received four (4) to ten (10) years for his robbery conviction. In addition, sentences of one and one-half (1½) to five (5) years were imposed for the conspiracy and robbery of a motor vehicle convictions. These sentences were directed to run consecutively to each other, thus resulting in the above aggregate sentence. A probationary sentence of five (5) years was further imposed in regard to appellant's conviction for unlawful restraint, but this sentence was directed to run concurrently with appellant's conspiracy sentence. No further penalty was imposed for appellant's remaining convictions.

utilize titles or headings as an aid in construing a statute. 1 Pa.C.S.A. § 1924.

On its face, the statute prohibits the taking or stealing of a motor vehicle. However, it is evident that it encompasses more than the mere theft or unauthorized use of a motor vehicle, as the General Assembly included the requirement that the vehicle be taken from another person in their presence. *Compare* 18 Pa.C.S.A. § 3702(a), *supra*, with 18 Pa.C.S.A. § 3921(a) (defining theft as the unlawful taking or exercise of unlawful control over the property of another with the intent to deprive him thereof) and 18 Pa. C.S.A. § 3928(a) (defining unauthorized use of a motor vehicle as the operation of an automobile or other motor-propelled vehicle of another without the consent of the owner). Moreover, the General Assembly did not include this offense in the section of the Crimes Code dealing with theft and it was not labeled as a theft crime. Instead, section 3702 was entitled "Robbery of Motor Vehicle," was included in the section of the Crimes Code pertaining to robbery, and was classified as a felony of the first degree, *see* 18 Pa.C.S.A. § 3702(b), unlike the theft offenses, the most serious of which is graded as a felony of the second or third degree, *see* 18 Pa.C.S.A. § 3903(a) and (a.1).

■ Our Supreme Court has defined robbery as "the felonious and forcible taking from the person of another of goods or money to any value by violence or putting in fear[.]" *Commonwealth v. Dantine*, 261 Pa. 496, 498, 104 A. 672, 673 (1918). *See also* Black's Law Dictionary 1329 (6th ed.1990) (defining robbery as the felonious taking of money, personal property or any other article of value, in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear). "[T]he offense is complete if [the money or goods] are taken in the presence of the owner by violence or putting in fear. In other words, it is not necessary for the completion of the offense that they be taken from the person of the owner." *Commonwealth v. Dantine, supra.*

Review of the pertinent legislative history sheds further light on the precise nature of this offense. Section 3702 began as an amendment to a bill that was pending before our General Assembly. In proposing the amendment, its sponsor, Senator Salvatore, stated that "this amendment deals with carjacking. I think it is a very important issue." Legislative Journal of the Senate, Vol. II, No. 35, at 945 (June 8, 1993).[10] It is thus apparent that, while inartfully drafted, section 3702 was intended to criminalize the conduct known as carjacking.

Carjacking is defined as the theft of an automobile from its driver by force or intimidation.[11] Merriam Webster's Collegiate Dictionary 173 (10th ed.1996). As previously indicated, a theft involves the unlawful taking or exercise of unlawful control over property. 18 Pa.C.S.A. § 3921(a). *See also* Black's Law Dictionary 1477 (6th ed.1990) (defining theft as the taking of personal property belonging to another, without his consent, with the intent to deprive him of the value of the same and to appropriate it to the use or benefit of the taker). A taking occurs when one acquires possession, dominion or control over an object. Black's Law Dictionary 1454 (6th ed.1990). Stealing likewise connotes a theft or taking of personal property of another, without leave or consent, and with the intent to keep or make use thereof. *Id.* at 1413.

■ Given the above definitions and our analysis of the history underlying the statute, we believe that the legislature intended to define the crime of robbery of a motor vehicle, or carjacking, as the taking or exercise of unlawful control over a motor vehicle, from its lawful user, by force, intimidation or fear. The Commonwealth must therefore prove

---

**10.** Carjacking gained national prominence following the tragic death of Mrs. Pamela Basu in 1992. *See Group W. Television, Inc. v. State of Maryland*, 96 Md.App. 712, 714–715, 626 A.2d 1032, 1033 (1993) (describing the facts giving rise to Mrs. Basu's death during a carjacking and noting that the case received national attention and served as the impetus for the enactment of anti-carjacking legislation).

**11.** The term carjacking is derived from a combination of the words car and hijacking. Merriam Webster's Collegiate Dictionary 173 (10th ed.1996).

the following elements to establish the commission of this crime: (1) the stealing, taking or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be accomplished by the use of force, intimidation or the inducement of fear in the victim. Having elucidated the nature and elements of the crime, we must determine whether the evidence was sufficient to sustain appellant's conviction for this offense.

The victim, Thomas Black, testified that he was parked outside a Country Fair convenience store listening to music when he saw appellant's accomplice, Nicole Kirby, walk by his car. N.T. 12/9/96 at 40 and 50–51. While Black and Ms. Kirby conversed, appellant walked by the passenger side of Black's vehicle, opened the door and entered the vehicle. *Id.* at 40 and 51. Appellant pulled out a gun and said "it's a jack." *Id.* at 40. After ordering Ms. Kirby to get in the car, appellant struck Black in the eye, told him not to "try nothing" and ordered him to drive to the pier. *Id.* at 41 and 52. Ms. Kirby corroborated Black's testimony and indicated that appellant pulled out a gun and ordered the victim to drive. *Id.* at 62 and 66.

While en route, appellant informed the victim that he wanted money. The victim replied that he had no money on his person, but might be able to get some from his apartment. *Id.* at 41. Consequently, appellant directed the victim to drive to his apartment. *Id.* Upon his arrival, appellant accompanied the victim to the apartment that he shared with his fiancée. *Id.* at 41, 52–53 and 78. Black told his fiancée that he needed money. *Id.* at 41, 53–55 and 79. His efforts were unsuccessful, however, and appellant directed Black to leave. *Id.* at 42, 55 and 79–80. Appellant then ordered Black to continue driving to various locations in Erie. *Id.* at 42 and 55. At some point during the drive, appellant took the victim's wallet and various pieces of jewelry, some of which were later recovered from Ms. Kirby at the time of her arrest. *Id.* at 49, 64–65, 68–69, 75 and 89.

Black discovered that he was low on fuel and apprised appellant of this fact. *Id.* at 43. Black further stated that he might be able to cash a check at a convenience store. *Id.* As a result, Black drove to another Country Fair store. *Id.* Appellant accompanied Black into the store, where an employee informed him that that he could not cash his check. *Id.* As a result, he and appellant each paid for a few dollars' worth of gas. *Id.*

John Bowser, an officer with the Pennsylvania Fish and Boat Commission, accompanied his fellow officers to the Country Fair convenience store. N.T. 12/10/96 at 7. Officer Bowser observed appellant and Black inside the store and thought that something was amiss. *Id.* at 7–8. He watched appellant and the victim exit the store, with appellant placing his hand on the back of the victim's neck. N.T. 12/9/96 at 44; N.T. 12/10/96 at 8–9. Appellant again admonished the victim not to "try anything." N.T. 12/9/96 at 44. After that, Officer Bowser lost sight of appellant and Black. N.T. 12/10/96 at 9.

While pumping gas into his vehicle, Black decided to create a diversion in an attempt to escape. N.T. 12/9/96 at 44–45 and 58. As a result, he slammed the gas cap down hard, thereby activating the car alarm. *Id.* at 44–45. Appellant was somewhat startled and got in the vehicle. *Id.* at 45. Black pretended to do likewise but ran to Officer Bowser's vehicle and apprised him of the situation. N.T. 12/9/96 at 45 and 62; N.T. 12/10/96 at 9–10. Appellant and Ms. Kirby then fled from the area in appellant's vehicle. N.T. 12/9/96 at 46 and 63; N.T. 12/10/96 at 10–11.

We find that the above evidence was more than sufficient to sustain appellant's conviction. The carjacking in this case effectively occurred when appellant entered the vehicle, displayed his weapon and forced the victim to drive to various locations. The statute does not require that a victim be forcibly ejected from his vehicle or the driver's seat in order for the crime to occur. Rather, pursuant to the definitions previously set forth, all that is necessary is that the defendant either take or exercise unlawful control over the operation of the vehicle, from the driver and in his presence, by

means of force or intimidation.[12]

In the alternative, the carjacking may be viewed as having occurred at the time of the victim's escape. It was undisputed at trial that appellant threatened the victim with a gun and struck him to compel compliance with appellant's demands. Appellant reinforced the victim's fear by accompanying him whenever they made a stop and advising him not to try anything. It was only through the victim's ingenuity and daring that he succeeded in escaping further predations and ran from his car. Given this sequence of events, it is evident that the victim was forced to relinquish possession and control of his vehicle because of appellant's actions. The crime of carjacking was then consummated when appellant took the car and fled from the scene.

Viewed in this manner, we are unpersuaded by appellant's arguments that his conduct constituted a simple theft. Rather, the evidence clearly demonstrates that appellant forcibly and unlawfully seized or took control of the vehicle from the victim and in his presence. Because appellant is not entitled to the grant of any relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

JOHNSON, J., files a Dissenting Opinion.

JOHNSON, Judge, dissenting.

The testimony of the victim, the employee of the Fish and Boat Commission, and the co-conspirator are all in agreement that the victim, Thomas Black, fled from his motor vehicle, ran to another vehicle and was seated in the second vehicle before the defendant, John George, occupied the driver's seat of Black's car and sped away. George was not in Black's presence at the time the car was taken. The statute, as enacted, requires the car to be taken "in the presence of" the victim before the crime of robbery of a motor vehicle can be established. I must conclude that George is entitled to arrest of judgment

on this specific crime, given the unique facts of this case. Accordingly, I must respectfully dissent.

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Prevish v. Northwest Medical Center*, 692 A.2d 192, 198 (Pa.Super.1997). When the language of a statute is clear and free from all ambiguity, any further deliberation as to its meaning is unwarranted. *American Trucking Associations, Inc. v. Scheiner*, 510 Pa. 430, 450–54, 509 A.2d 838, 849–50 (1986); *Meier v. Maleski*, 670 A.2d 755, 759 (Pa.Cmwlth.1996). This Court is constrained to give effect to the obvious meaning of clear and unambiguous statutory language; when the words are clear and free from all ambiguity, the letter of it is not to be disregarded. *Commonwealth v. Patchett*, 284 Pa.Super. 252, 425 A.2d 798, 800 (1981).

The words of the statute here under review could not be any clearer. The statute provides:

§ 3702. **Robbery of motor vehicle**

(a) **Offense defined.**——A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle.

By its terms, the statute requires that the theft of the motor vehicle occur "in the presence of [the victim] or any other person in lawful possession of the motor vehicle." The unrebutted testimony of the victim, Thomas Black, was to the effect that he had been outside of his car pumping gasoline into the car's fuel tank. Jury Trial Transcript (JTT) December 9, 1996, at 45. When he had finished pumping the gasoline, he began to enter his vehicle, observed the defendant, John George also entering the Black vehicle, and then he exited his car, shut the door, and ran over to a vehicle owned and operated by the Pennsylvania Fish and Boat Commission.

---

12. An analogy to hijacking further illustrates this point. It would be ludicrous to suggest that a hijacking does not occur when a hijacker forces an airline pilot to deviate from his course by threat of violence or other means. There is no logical reason why a similar result should not pertain in a carjacking, as in either case, control and use of the vehicle has been forcibly acquired from the operator by one who has no lawful right to its use or possession.

*Id.* Nicole Kirby testified that Black "[had] seen the fish commissioners, and started to get in the car and then ran." *Id.* at 62. John Bowser, employee of the Pennsylvania Fish and Boat Commission, testified that Black "came at a dead run towards the passenger door of our car ... and he stood there in our passenger door like he didn't know what to do, and then he opened the door, which was unlocked, and jumped in the passenger side." JTT, December 10, 1996, at 9–10.

There was no evidence produced that George took the car in the presence of the victim Black. While distances are not set forth from the testimony, one may surmise that the distance was more than a few feet, based on Bowser's testimony that the victim "came at a dead run towards the passenger door of our car." Black ran from his own vehicle, unimpeded, and was seated in the passenger front seat of the Fish and Boat Commission vehicle when George took the vehicle and sped off. I am unable to conclude, as do my colleagues, that this constituted taking the vehicle in George's presence.

I need not disagree with my colleagues that § 3702 was "intended to criminalize the conduct known as carjacking." Slip opinion at 6. However, because the words chosen by the legislature are both clear and free from any ambiguity, I cannot join my distinguished colleagues in pursuing the legislative history. Nor do I find the definition of "robbery" helpful, inasmuch as the term appears in the heading of the statute but is not included in the words of the statute itself. *See Commonwealth v. Lopez,* 444 Pa.Super. 206, 663 A.2d 746, 748–49 (1995) (statute headings may be considered in construing a statute but the letter of a statute is not to be disregarded under the pretext of pursuing its spirit).

My colleagues describe the statute here under review as being "inartfully drafted." Maj. opinion at 919. They then turn to Merriam Webster's Collegiate Dictionary for a definition of carjacking, and to Black's Law Dictionary for a definition of theft. However, § 3702 stands on its own. It defines the offense as occurring when an actor "steals or takes a motor vehicle from another person *in the presence of that person* or any other person in lawful possession of the motor vehicle." The majority concludes that "[t]he carjacking in this case effectively occurred when appellant entered the vehicle, displayed his weapon and forced the victim to drive to various locations." *Id.* at 920. I must respectfully disagree. The majority would expand the clear meaning of the statute to provide, in addition, that the crime is completed once an actor "exercises unlawful control over the operation of the vehicle." *Id.* at 920. I find nothing in the statute to support this conclusion.

George, the appellant, is not arguing, as my colleagues assert, that his conduct constituted a simple theft. Following a jury trial, George was convicted of robbery, criminal conspiracy, unlawful restraint, terroristic threats, simple assault, and robbery of a motor vehicle. The only conviction that George has contested through this appeal is the conviction for robbery of a motor vehicle. He contends that the elements as set forth in the statute necessary to support a conviction were not proven. I agree, on the basis that the car was only taken by George after Black had escaped, ran to the Fish and Boat Commission vehicle and jumped inside that latter vehicle. At the time that George got behind the wheel of Black's car and drove off, Black was no longer in George's presence. Since the theft must occur in the presence of the victim, I am constrained to conclude, on these undisputed facts, that George was guilty of a number of crimes, but not robbery of a motor vehicle. Accordingly, I am constrained to dissent.