**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Larry JONES, a/k/a Larry Bryant, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 20, 2000.

Filed March 12, 2001.

M. Susan Ruffner, Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE McEWEN, President Judge, EAKIN and BROSKY, JJ.

EAKIN, J.:

¶1 Larry Jones appeals from a judgment of sentence entered following his convictions for robbery of a motor vehicle, reckless endangerment, rape and involuntary deviate sexual intercourse. We affirm.

¶2 Police detectives Yuhouse and Bender were searching for a rapist using a sketch drawn with the victim's assistance. The detectives saw appellant and noticed he closely resembled the sketch. When the detectives approached, appellant fled. Alfred Terry was standing up in the back of a nearby pickup truck when he saw appellant jump into the driver's seat; he yelled at appellant, but appellant drove off with Terry still in the back of the truck. Terry was unable to escape because of the truck's speed, and was tossed around during appellant's reckless flight, which finally ended when appellant rammed a police roadblock.

¶3 A jury found appellant guilty of the above crimes. In this timely appeal, appellant claims there was insufficient evidence to convict him of robbery of a motor vehicle because there was no proof he took the vehicle by use of force, intimidation or inducement of fear in the victim.

When we evaluate a challenge to the sufficiency of the evidence, we must de-

termine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. Furthermore, a mere conflict in the testimony of the witness does not render the evidence insufficient, because "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence."

*Commonwealth v. Lytle*, 444 Pa.Super. 126, 663 A.2d 707, 708 (1995) (citations omitted).

¶ 4 A person commits robbery of a motor vehicle when "he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S. § 3702(a). This definition has been restated by a panel of this Court:

> [W]e believe that the legislature intended to define the crime of robbery of a motor vehicle, or carjacking, as the taking or exercise of unlawful control over a motor vehicle, from its lawful user, by force, intimidation or fear. The Commonwealth must therefore prove the following elements to establish the commission of this crime: (1) the stealing, taking or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be

accomplished by the use of force, intimidation or the inducement of fear in the victim.

*Commonwealth v. George*, 705 A.2d 916, 919–20 (Pa.Super.1998).

¶ 5 Clearly appellant took the truck in the presence of Terry, who was standing in the open bed of the truck, obvious to all. Appellant, in full flight, obviously did not care about the man in the back; given the testimony, the jury could find appellant saw and heard Terry, but stole the truck from him anyhow, forcing Terry to remain in the back. This establishes that the taking was knowing, and in the presence of the victim.

¶ 6 That Terry remained in the truck is not determinative, as the victim need not be separated from the vehicle for it to be taken "from" him. *George*, at 920. The victim's physical distance from the stolen article is not the key to stealing, nor is there an element of permanent deprivation in this statute. Taking control of a car and driving it away is enough, whether the possessor is kidnapped or discarded; indeed, the circumstances here were more dangerous than if the victim had been left behind. He was not physically separated from the truck, but clearly possession and control of the truck was in the hands of the appellant, not Terry.

¶ 7 Appellant contends the Commonwealth did not establish the third element, added[1] by *George, supra.* He claims there was no proof of force or intimidation, as he did nothing to or toward the victim. There is no claim the jury was

---

1. The majority of the panel felt this third element was required because the title of the crime included the term "robbery." As Judge Johnson notes in dissent, statutory headings are helpful, but the letter of a criminal statute should not be disregarded in pursuit of its spirit. *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746 (1995). The letter of this statute requires no force, only the presence of the possessor of the vehicle; as the present case makes clear, that in itself can be a significant danger which aggravates the crime. We will address the case, however, using the test set forth in *George*.

not properly instructed on the point, and we find the circumstances allowed the jury to find Mr. Terry would not share appellant's estimation of how his actions were perceived.

¶ 8 A pickpocket does not commit robbery, as the victim is unaware of the contact; the taking is thus not accomplished by force. *Commonwealth v. Williams,* 379 Pa.Super. 538, 550 A.2d 579, 582 (1988); *Commonwealth v. Windell,* 365 Pa.Super. 392, 529 A.2d 1115 (1987). A purse-snatcher, however, is guilty of robbery, as the victim is aware of the force. *Commonwealth v. Brown,* 506 Pa. 169, 484 A.2d 738 (1984); *Commonwealth v. McNair,* 376 Pa.Super. 604, 546 A.2d 688 (1988). There may be no force directed at the purse-snatch victim; indeed, the snatcher may not look at the victim any more than appellant looked at Terry, but the taking is still forcible.

¶ 9 Terry was aware of the taking, and it certainly was accomplished with as much force as accompanies a purse-snatching. That Terry didn't carry the pickup on his arm does not make the taking any less forceful. Force is that of which the victim is aware and by reason of that force, is compelled to part with his property. *Williams, supra.* Such force is made out by these facts. We decline to minimize the seriousness of the offense because the victim sensibly did not manifest more than verbal resistance.

¶ 10 By any relevant definition, appellant had possession of the truck and the victim did not. Appellant took that possession forcibly, not by right or consent, not by stealth or trickery, not by discovering an abandoned truck. Finding the facts sufficient to meet the elements of the crime, we affirm the trial court's decision.

¶ 11 Judgment of sentence affirmed.

¶ 12 BROSKY, J., files a dissenting opinion.

BROSKY, J., Dissenting:

¶ 1 I dissent. As indicated in the Majority Opinion, the Appellant herein jumped into the unoccupied cab of a pick-up style truck and drove off in an effort to escape law enforcement agents. Unfortunately, Mr. Terry, one of the individuals assigned usage of the truck by its owner, the City of Wilkinsburg, was standing in the "bed" of the truck near the tailgate at that moment and became "trapped" in the bed as Appellant sped off. The getaway proved brief, however, as shortly thereafter Appellant crashed the truck into a police car. In the process, Mr. Terry suffered some bruises, but escaped serious injury. For his misdeeds, Appellant was convicted of, among other things, 18 Pa.C.S.A. § 3702(a), an offense entitled "robbery of a motor vehicle." The offense indicates that one is guilty of the offense if "he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle."

¶ 2 The present case is further proof that even when an offense appears to be worded in such a fashion as to be incapable of confusion, real life events will crop up to test the parameters of the language used, regardless of the degree of care that went into the drafting of the provision. Consider, for instance, the terminology, "in the presence of." In this case, Appellant was in the cab of the vehicle when he effectuated the taking of the vehicle while the vehicle's lawful user was in the bed, separated from Appellant's immediate "presence" by steel and glass, not to mention several feet of space. Query: was Appellant "in the presence of" Mr. Terry when he took the motor vehicle? If this real life example is not problematic enough, how might a court deal with a circumstance

where the vehicle stolen was a tractor-trailer and the truck driver was in the trailer when the thief climbed into the tractor and absconded with him still in it?

¶ 3 In the present case, it would seem that if Appellant is deemed to have been "in the presence of" the victim here, despite the fact that the victim was in the bed of the truck and Appellant was in the cab, when the vehicle was "taken," then the statutory definition for "robbery of a motor vehicle" would have been met. Appellant has not chosen to argue this point but, instead, focuses upon the element of force in the effectuation of the theft, an element that was implicated in judicial interpretation of the offense in question.

¶ 4 The first appellate decision to consider the statutory section in question was *Commonwealth v. George*, 705 A.2d 916 (Pa.Super.1998) (Opinion by, Brosky, Sr. J.). In an instance of statutory interpretation, we admittedly interjected an element that is not literally encompassed in the definition of the offense but, after contemplation and debate, was concluded to have been consistent with the intent of the legislature. In construing the statute in question we indicated that, by passage of the criminal sanction in question, the legislature had intended to address the occurrence generally referred to as "carjacking." Consistent with this assessment, we concluded that the legislature had intended to define the offense as "the taking or exercise of unlawful control over a motor vehicle, from its lawful user, by force, intimidation or fear." *Id.*, 705 A.2d at 919. Thus, we stated:

> The Commonwealth must therefore prove the following elements to establish the commission of this crime: (1) the stealing, taking or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful

possession of the vehicle; and (3) **the taking must be accomplished by the use of force, intimidation or the inducement of fear in the victim.**

It is the last factor that Appellant suggests is lacking. Upon reflection, I must agree.

¶ 5 To assist in the study of the "force" requirement, let us consider a few scenarios, both "hypothetical" and real, the first, the factual pattern that occurred here. The second, a situation where the owner of the pick-up truck is busy filling a passenger side tire with air when the car thief enters the vehicle and drives off with it; and the third, where a person parks just outside a convenience store, enters to buy a snack, beverage, or pack of cigarettes, and leaves the car running whereupon the car thief jumps in and drives off. Which, if any, or all, of these scenarios would justly satisfy the elements of the offense in question as set forth in *George?* While the Majority argues that the first scenario satisfies the force element in question, I doubt that they would also argue that the third scenario meets the same requirement. The second scenario seemingly falls somewhere in the middle. Yet, the actions of our absconder are the same in all three instances, as is the "force" utilized to accomplish the theft. In each instance, the thief jumps into an unoccupied passenger compartment and drives off with the vehicle. No confrontation occurs with the owner of the vehicle in any of the three scenarios, the victim never "surrenders" the property after being subjected to a threat or show of force and, in reality, in none of the scenarios was a "show of force" necessary to accomplish or effectuate the theft.

¶ 6 If the factual context presented here is deemed to meet the force requirements, but is not met when the owner is inside the convenience store when the vehicle is taken, what is the distinguishing factor, the

proximity of the victim? I think not. As the Majority correctly points out, when an individual has his wallet pickpocketed, it is not deemed a "robbery" despite the fact that one can hardly be more proximate to the item stolen than in that instance.

¶ 7 The Majority suggests that awareness of the theft is a key factor in distinguishing theft from robbery. However, again consider the scenarios outlined above. The person filling the tire with air would be just as aware of the theft as was the victim here. Moreover, the person who just stepped inside the convenience store could be just of aware of the theft if there were a glass door or large window to observe the absconder enter the vehicle and drive away with it.

¶ 8 In reaching a conclusion contrary to the one asserted here, the majority analogizes to the act of "purse-snatching," which is deemed a robbery, while arguing that "awareness" of the "force" is the distinguishing factor. A review of the authority cited for this proposition, *Commonwealth v. Brown*, 506 Pa. 169, 484 A.2d 738 (1984), reveals that "awareness" of the force is not necessarily the distinguishing factor the majority holds it out to be. In discussing the use of force in the context of a purse-snatching the Court states:

> The force used in taking the purse from the victim's arm was a harmful touching of the person, accompanied with **sufficient force to compel the victim to part with the conscious control of her property,** and supports a robbery conviction under § 3701.
>
> . . .
>
> The ordinary citizen has the right to go about his way free from the fear of attack to his person from those who would deprive him of control over his goods. That right is violated even by the slight tug on the arm by the purse

thief **who must use force to wrench the purse from the arm of the victim** without regard to her safety.

(Emphasis provided).

¶ 9 The word "force," like most words, could be subject to some interpretation and definition. Indeed, it could be asserted that the word "force" means any physical exertion, energy or effort. Thus, theoretically, it could be said that when any property is "taken" from someone's "possession" through physical exertion or effort, a robbery has been committed. Yet, it is clear that such an interpretation is not at the basis of a definition of robbery. If it were, then all theft would be constitute "robbery" since the removal of another's property would require some exertion of energy and the displacement of the property would be non-consensual. As the above sections of the *Brown* Opinion attest, the force in question is not the energy utilized to take property, but that used to coerce a surrender of property, or a force, with some degree of violence, that directly removes the property from the victim's possession or facilitates that end.

¶ 10 In analogizing to the purse-snatching scenario, the Majority states "that Terry didn't carry the pickup on his arm does not make the taking any less forceful." However, this assessment does not seem to comport with *Brown.* There our Supreme Court stated that the "force used in taking the purse from the victim's arm was a **harmful touching of the person,...**" The Court further comments on the right to be "free from the fear of **attack to his person**" and indicates that this right is violated by the slight tug on the arm. Thus, the connection between the utilization of force and the person of the victim seems to be crucial in determining whether there has been a robbery.

¶ 11 The purse-snatching scenario can best be harmonized with the general thesis of *George,* to the extent that the key to "robbery" is identified as a direct personal confrontation that compels one to surrender one's property to the thief, or the actual taking of another's property by utilizing physical force to the victim's body. From either perspective the focus is upon the use of actual "force," or threat of force, to take the property, in other words, to effectuate the theft. It is this element that elevates a theft, at common law, a crime against property, to robbery, a crime against the person. Viewed from this perspective one can see the logical differentiation. Stealing a suitcase from someone's side when the owner has turned away from the suitcase is not robbery because "force," implied or actual, was not instrumental in effectuating the theft of the property. Pickpocketing someone's wallet is not robbery because, although the wallet might be on the individual's person, "force" was not instrumental in effectuating the theft of the property from the victim. Purse snatching is robbery because "force" is used to physically separate the property from the victim's possession. A "stick-up" is robbery because the "threat of force" is instrumental to effectuating the taking of the property.

¶ 12 In *George* the panel opined that by passing 18 Pa.C.S.A. § 3702, the legislature had intended to specifically criminalize the act commonly known as "car jacking." There, the perpetrators entered an occupied vehicle, forced the driver to relinquish personal property at gunpoint, struck the driver in the face and ordered the driver to drive the perpetrators around. In all respects, the perpetrators had committed what is commonly understood to be a "carjacking." Yet, since in *George* the driver escaped prior to the theft of the motor vehicle, the facts technically did not fall within the definition of robbery of a motor vehicle.[2] Yet, just as clearly, the theft had been "effectuated" by the threat of force. The vehicle was occupied when the perpetrators entered it and, clearly, the driver alighted from the vehicle and abandoned it to the whimsy of the perpetrators as a direct result of the threat presented to him. In considering the apparent intent of the statutory provision, as well as the legislative history, we concluded that proof of the crime required a showing that the taking was accomplished "by the use of force, intimidation, or inducement of fear in the victim." We further concluded that the offense did not require the ejection of the owner from the vehicle, but rather, the exercise of unlawful control of the vehicle was deemed sufficient.

¶ 13 In the present case, it is clear that although Appellant stole or took the pickup truck, the "theft" was not accomplished by the use of force, intimidation or the inducement of fear in the victim. Since the cab of the truck was unoccupied at the time, Appellant had to merely enter the vehicle, activate it and drive away. The "force" utilized was the same as would have been utilized had Mr. Terry been fifty yards from the truck, as opposed to in the bed.

¶ 14 It is conceivable that the majority has misgivings about the judicial interpretation that took place in *George.* Clearly, that case did engraft elements that were not explicitly set forth in the literal definition of the offense. However, *George* does not represent a case where the law was augmented casually or carelessly without thought or contemplation. The matter was clearly set forth, the purpose of the statute and the legislative history were

---

2. The Dissent, in *George,* authored by Judge Johnson, illustrates this point quite aptly.

consulted and the prevailing interpretation was adopted over a thorough dissent which spelled out the contrary point of view. In reaching its conclusion the Majority there concluded that their interpretation served the original intent of the statute. While some might question the interpretation that occurred there, such "second guessing" would best be done by a reexamination of the issue by this Court sitting *en banc* or by our Supreme Court.

¶ 15 Ironically, a literal application of the definition contained in the statute would have meant that the individual who stuck a gun in the face of a driver, struck him in the head and forced him to drive a vehicle around town would have escaped conviction for "robbery of a motor vehicle" whereas, here, an individual who accomplished the theft without a display of force would be subject to conviction for that offense. *George* was authored with a purpose of defining the crime to conform to its apparent intent. That intent, as expressed in *George*, is not applicable here. Consequently, I believe the *George* decision compels reversal of the conviction for robbery of a motor vehicle.

¶ 16 The true crux of the Majority's decision might be evidenced by the statement "We decline to minimize the seriousness of the offense because the victim sensibly did not manifest more than verbal resistance." Majority Opinion, at p. 799. I would respectfully suggest that a similar desire to not minimize the seriousness of criminal conduct was at work in the *George* case. Confronted with what must be conceded to have been a stereotypical "carjacking," the peculiarities of the statutory definition would, nevertheless, have meant that the perpetrator would have escaped the punishment the offense was specifically intended to impart. *George* attempted to rectify that situation with the statutory interpretation that was conducted there.

In so doing, the offense was interpreted consistent with general notions of "robbery." However, as demonstrated above, here that concept is lacking. Moreover, and viewed from a visceral level, clearly the conduct of Appellant here was not as "serious" as that of the perpetrators in *George*, and, to the extent, Appellant's conduct created danger to Mr. Terry, there are other offenses in the Crimes Code to deal with that conduct. Reckless endangerment comes immediately to mind and would allow for the vindication of that interest without expanding the crime to cover scenarios that are not consistent with general notions of robbery.

¶ 17 For the above reasons, I dissent.