COMMONWEALTH of Pennsylvania

v.

Terrence BONNER, Appellant.

Superior Court of Pennsylvania.

Submitted March 28, 2011.

Filed Aug. 17, 2011.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Jennifer O. Andress, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., ALLEN and STRASSBURGER,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

This is an appeal from a judgment of sentence entered against appellant, Terrence Bonner, in the Court of Common Pleas of Philadelphia County Criminal Division on November 20, 2009. Appellant was convicted, in a jury trial, of robbery of a motor vehicle, one count of burglary, possession of an instrument of crime, and indecent assault. Appellant was sentenced to 13 to 26 years' confinement. This timely appeal followed. We affirm.

The trial court has summarized the facts of this matter as follows:

At approximately 4:30 a.m. on April 13, 2008, Appellant broke into the home of [the victims], husband and wife, at

* Retired Senior Judge assigned to the Superior Court.

1211 Juniper Street; robbed them at knifepoint; sexually assaulted [wife]; and stole their car.

Appellant entered the victims' home through a first-floor kitchen window. (NT 9/23/09, 80). Appellant took a knife from the kitchen, and went upstairs to the third-story bedroom. (NT 9/23/09, 76). When Appellant entered the bedroom, both victims were asleep in their bed. Appellant held the knife to [wife]'s throat and said, "I want the money, give me the money. Give me the money or else if you move I will kill you." (NT 9/23/09, 65).

When [wife] woke up, Appellant held the knife to her throat and pinned her head down with his other hand. (NT 9/23/09, 66). When [husband] woke up and rolled over towards his wife, Appellant told him to turn around or he would kill [wife]. (NT 9/23/09, 67). Appellant then began to fondle [wife]'s genitals with his hand. (NT 9/23/09, 68).

After [wife] told Appellant they had money in the closet, Appellant forced her out of bed, and warned her not to turn on the lights. (NT 9/23/09, 69). [Wife] did as Appellant instructed and gave Appellant approximately $100 from the closet. (NT 9/23/09, 69–70).

After getting the money, Appellant ordered [wife] to give him the car keys. (NT 9/23/09, 70). [Wife] told Appellant that the car keys were in the kitchen, so Appellant ordered her to go downstairs without turning around or turning on the lights. (NT 9/23/09, 71). Once in the kitchen, [wife] found the car keys and gave them to Appellant. (NT 9/23/09, 74). Appellant then ordered [wife] to go to the counter and take off her pants. (NT 9/23/09, 74). At this point, [wife] believed Appellant intended to kill her and she began to resist by raising her voice. (NT 9/23/09, 74).

Hearing the beginnings of a struggle, [husband] ran down stairs toward the kitchen and began yelling for help. (NT 9/23/09, 74). Appellant fled through the back door and got into the victims' car, which was parked just outside the door. (NT 9/23/09, 75, 60–61). [Husband] went outside and saw his car being driven away. (NT 9/23/09, 128).

The victims immediately called 911, and police responded approximately five minutes later. (NT 9/23/09, 80). The victims were able to provide the make, model and license plate number of their vehicle, but were unable to provide more than a general description of Appellant. (NT 9/23/09, 109, 79). The victims described their attacker as being approximately 5'8" tall with a medium build and a dark complexion. (NT 9/23/09, 79). [Husband] additionally stated that their attacker was wearing a dark, short-sleeved t-shirt with a shiny emblem on the front and a dark bandana or piece of cloth on his head. (NT 9/23/09, 123).

At approximately 5:00 a.m., Philadelphia Police Detective John Hopkins was assigned to investigate the burglary. (NT 9/23/09, 162). He arrived at 1211 Juniper Street at approximately 5:15 a.m. (NT 9/23/09, 162). After investigating the scene for about forty-five minutes, Detective Hopkins learned that the victims' car had been recovered on the 1300 block of South Juniper Street and went there. (NT 9/23/09, 178). When he arrived, Detective Hopkins saw a knife on the ground approximately three feet behind the car. (NT 9/23/09, 181). He recovered the knife, and took it back to the victims' home. (NT 9/23/09, 180). [Wife] recognized the knife as one taken from her kitchen. (NT 9/23/09, 181). Detective Hopkins then had the vehicle towed to a police garage for processing. (NT 9/23/09, 181).

The following day, April 14, 2008, Detective Hopkins obtained approximately seventeen fingerprints from the victims' car. (NT 9/23/09, 187). Specifically, Detective Hopkins lifted fingerprints from the exterior of the driver's side door, the exterior door post and the interior driver's side door handle. (NT 9/23/09, 187). Initially, Detective Hopkins received a report that no matches were found to the fingerprints he obtained from the car. (NT 9/23/09, 191).

Philadelphia Police Officer Christopher Campbell testified that, on May 15, 2008, he "saw" Appellant wearing a black "doo rag." (NT 9/24/09, 109).[Footnote 2]

On May 16, 2008, Clifford Parson, a civilian employee in the Records and Identification Unit, received an automated report that Appellant's fingerprints matched six fingerprints obtained by Detective Hopkins from the victims' vehicle. (NT 9/24/09, 58–59). Based on this information, a warrant was issued for Appellant's arrest in connection with the burglary at 1211 Juniper Street, and Appellant was arrested on October 27, 2008. (NT 9/24/09, 108).

[Footnote 2] Obviously, the jury was **not** told that Officer Campbell arrested Appellant at this time on an unrelated charge, and that Appellant's fingerprints were entered into the Philadelphia fingerprint database pursuant to this arrest.

Trial court opinion, 7/15/10 at 3–5 (emphasis in original).

Appellant challenges the sufficiency of the evidence for his conviction for robbery of a motor vehicle and raises the following issue for our consideration:

Was not the evidence insufficient for appellant's conviction for robbery of a motor vehicle, insofar as the motor vehicle was not taken in the presence of the complainant as required by statute?

Appellant's brief at 3.

Before addressing appellant's argument, we will recite our standard of review:

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa.Super.2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005), *appeal denied*, 585 Pa. 685, 887 A.2d 1239 (2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id.* Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa.Super.2006).

*Commonwealth v. Yasipour*, 957 A.2d 734, 745 (Pa.Super.2008), *appeal denied*, 602 Pa. 658, 980 A.2d 111 (2009).

 Robbery of a motor vehicle is defined as follows: "A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S.A. § 3702(a).

Appellant states that the testimony at trial was clear that the two complainants were inside the house when their keys were taken by force. (Appellant's brief at 7.) Appellant left the house, entered the car, and drove off. (*Id.*) Wife remained in the house, and husband came outside as the car was being driven away. (*Id.*) Appellant argues this was a robbery, but not a "robbery of a motor vehicle" as defined by statute. (*Id.*) Appellant maintains Section 3702(a) of the Crimes Code applies only to "carjacking situations" which this was not, and as such, his conviction cannot stand. (*Id.*)

In support of his position, appellant relies on *Commonwealth v. George,* 705 A.2d 916 (Pa.Super.1998), *appeal denied,* 555 Pa. 740, 725 A.2d 1218 (1998), which was the first time this statute was interpreted and applied by an appellate court. In *George,* this court distinguished robbery of a motor vehicle from "simple theft" and affirmed George's conviction for robbery of a motor vehicle in a case where he essentially hijacked the driver by forcing him to drive from location to location at gunpoint, rather than taking direct control of the car himself. We explained that the Commonwealth must prove the following elements to establish the commission of this crime: (1) the stealing, taking, or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be accomplished by the use of force, intimidation, or the inducement of fear in the victim. *Id.* at 920.

■ Instantly, appellant focuses his argument solely on his claim that the robbery of the motor vehicle was not in wife's presence. However, we find that claim unavailing. One of the main points of the *George* decision is not whether the victim was physically ejected from the driver's seat, but whether the victim was robbed of the car. The *George* court instructed:

> The statute does not require that a victim be forcibly ejected from his vehicle or the driver's seat in order for the crime to occur. Rather, pursuant to the definitions previously set forth, all that is necessary is that the defendant either take or exercise unlawful control over the operation of the vehicle, from the driver and in his presence, by means of force or intimidation.

*Id.* at 920–921.

Clearly, wife, the victim in this case, was deprived of her car in her presence. After taking wife into the kitchen with a knife at her throat, appellant repeatedly threatened to kill her until she handed over the keys to her car, effectively giving appellant control of the car. After taking the keys and continuing to threaten her, appellant fled from the house in wife's car which was parked outside the door.

The Commonwealth refers us to the case of *Commonwealth v. Jones,* 771 A.2d 796 (Pa.Super.2001), as further support for appellant's conviction of the charge of robbery of a motor vehicle. In *Jones,* appellant fled from a detective who was approaching him. At the time, the detective was looking for a rapist and was carrying a sketch of the rapist. Meanwhile, Alfred Terry was standing in the back of a nearby pickup truck when he saw appellant jump into the driver's seat. He yelled at appellant, but appellant drove off with Terry still in the back of the truck. Terry was unable to get off the truck because of the truck's speed. The episode ended when appellant crashed into a police roadblock.

Jones was charged with robbery of a motor vehicle, among other things, and was convicted. On appeal, Jones claimed there was insufficient evidence to convict

him of robbery of a motor vehicle because there was no proof he took the vehicle by use of force, intimidation, or inducement of fear in the victim. In affirming Jones' conviction, we explained:

> Clearly appellant took the truck in the presence of Terry, who was standing in the open bed of the truck, obvious to all. Appellant, in full flight, obviously did not care about the man in the back; given the testimony, the jury could find appellant saw and heard Terry, but stole the truck from him anyhow, forcing Terry to remain in the back. This establishes that the taking was knowing, and in the presence of the victim.

*Id.* at 798.

██ Jones argued that the third element was not established by the Commonwealth; *i.e.*, there was no proof of force or intimidation as he did nothing to or toward the victim. This court disagreed and found that the taking was accomplished by force. *Id.* at 799. "Force is that of which the victim is aware and by reason of that force, is compelled to part with his property. Such force is made out of these facts." *Id.*

Critical to our resolution of the instant matter is that in *Jones*, as here, the theft was not of an unattended automobile but of a car whose owner was in plain sight and who was directly victimized by the robbery of her motor vehicle. Appellant's robbery of wife's car was certainly no less in the presence of the victim than the robbery discussed in *Jones*.

Viewing the evidence in the light most favorable to the Commonwealth, we find appellant's challenge to the sufficiency of the evidence to be without merit. Accordingly, we affirm.