J. A26029/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRYAN WAYNE BRACKBILL JR., | : | No. 1433 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 14, 2014,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0005421-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 08, 2015**

Bryan Wayne Brackbill, Jr., appeals from the judgment of sentence of August 14, 2014, following his conviction of second-degree murder and theft by unlawful taking.[1]  We affirm.

The facts in this case are as follows:  On June 1, 2013, Shawn Snyder ("Mrs. Snyder") and appellant's then-girlfriend, Crystal Hughes ("Hughes"), left to go on a road trip from Harrisburg to Minnesota.  (Notes of testimony, 8/11/14 at 94.)  Hughes did not have her cell phone with her on the trip, as it was being used by appellant.  (Notes of testimony, 8/10/14 at 96, 8/11/14 at 252.)   While Mrs. Snyder and Hughes were en route to Minnesota,

---

* Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b); 3921(a), respectively.

William Snyder ("Mr. Snyder") dropped appellant off at the Parkside Bar in Hershey, Pennsylvania, while Mr. Snyder went to a doctor's appointment. (Notes of testimony, 8/11/14 at 127.) After reuniting with appellant, both appellant and Mr. Snyder had a few drinks at the Parkside Bar before traveling to Arooga's where Mr. Snyder left appellant after sharing a pitcher of beer. (*Id.* at 129.) Later that evening, Mr. Snyder received a telephone call from an acquaintance indicating that appellant was "saying some nasty things" about Mr. Snyder at Arooga's. (*Id.* at 130.) Upon arriving at Arooga's, Mr. Snyder asked the bouncers to cut off appellant, and then had appellant wait outside for Mr. Snyder to take him home. (*Id.* at 133-134.) When Mr. Snyder returned to the parking lot to take appellant back to his house, appellant was gone. (*Id.* at 134.)

After returning home, Mr. Snyder testified that appellant appeared at his house at approximately 1:00 am on June 2, 2013, to collect his belongings. (*Id.* at 136.) During this encounter, Mr. Snyder testified that he saw the victim, Sandra Mulder, standing at the bottom of the front steps. (*Id.*)

Meanwhile, Mrs. Snyder and Hughes had stopped for the night at a hotel in Indiana. (*Id.* at 100.) Over the course of the night, Mrs. Snyder testified that she received numerous phone calls and text messages from appellant, who was using Hughes' phone. (*Id.* at 104-105.) Hughes

eventually decided that she would remain at the hotel in Indiana rather than continue on to Minnesota with Mrs. Snyder. (*Id.* at 108.)

Andrew Power ("Mr. Power") testified that on June 2, 2013, his wife Lisa Power ("Mrs. Power") unsuccessfully attempted several times to get in touch with the victim, who was her mother. (Notes of testimony, 8/12/14 at 172.) After the unsuccessful attempts to get in touch with the victim, both Mr. and Mrs. Power went to the victim's house, where Mr. Power discovered the victim's body face down and bound with duct tape. (*Id.* at 179.)

Later on June 2, 2013, appellant traveled to Indiana to pick up Hughes, who was still waiting at the hotel where she and Mrs. Snyder had stopped the night before. (*Id.* at 262.) Appellant was driving the victim's car. (*Id.*) Appellant drove with Hughes to Indianapolis, where he dropped Hughes off, telling her that "he didn't want [her] to be involved." (*Id.* at 267, 292.) Appellant traveled west where he was eventually apprehended by the Missouri State Highway Patrol approximately 140 miles west of St. Louis. (*Id.* at 227.)

Appellant was convicted of second-degree murder and theft by unlawful taking on August 14, 2014, and sentenced to life imprisonment immediately thereafter. (Trial court opinion, 1/16/15 at 1.) Appellant filed the instant appeal on August 26, 2014. Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. Rule 1925(b), and the trial court filed an opinion.

Appellant has raised the following issues for this court's review:

A.     Whether the evidence at trial was insufficient to support the jury's verdict as to second degree murder and theft by unlawful taking in that: the evidence did not establish beyond a reasonable doubt that the appellant removed the victim's vehicle intending to permanently deprive her of said moveable property and without the victim's permission:  the alleged theft of motor vehicle occurred after the alleged homicide therefore the evidence was insufficient to establish that the homicide was committed during the course of the felony theft and therefore insufficient to support the verdict of second degree murder.

B.     Whether the trial court erred in instructing the jury on the elements of robbery when the appellant was not charged with robbery.

C.     Whether the pretrial motions court erred in denying the appellant's motion to dismiss/ habeas corpus petition as to theft in that the Commonwealth could not establish a ***prima facie*** case that the appellant removed the victim's vehicle intending to permanently deprive her of said movable property and without the victim's permission.

D.     Whether the pretrial motions court erred in denying appellant's motion to dismiss/habeas corpus petition as to second degree murder in that the Commonwealth could not establish a ***prima facie*** case as to theft which formed the basis for the charge of second-degree murder.

Appellant's brief at 4.

The first issue raised by appellant is whether the evidence at trial was sufficient to warrant convictions for second-degree murder and theft by unlawful taking.

In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted). The Commonwealth may satisfy its burden of proving a defendant's guilt beyond a reasonable doubt by using wholly circumstantial evidence. *Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008).

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted).

The credibility and weight of the evidence are both matters that are in the sole purview of the jury. Specifically, when considering whether or not the evidence was sufficient to prove each element of each charge beyond a

reasonable doubt, we cannot assume the task of weighing evidence and making independent conclusions of fact. ***Commonwealth v. Lewis***, 911 A.2d 558, 563 (Pa.Super. 2006) (citations omitted). "Any doubts regarding [an appellant's] guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.***

In the instant case, after reviewing the evidence presented, cast in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence is sufficient to warrant the jury's convictions for theft by unlawful taking and second-degree murder. We first address the theft by unlawful taking charge.

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). In this case, the Commonwealth has established all of the necessary elements to prove a theft by unlawful taking beyond a reasonable doubt. First, while not an element to the theft by unlawful taking charge, but a necessary component to this case, the Commonwealth established that appellant, having sold a van that he previously owned, did not have access to a car. (Notes of testimony, 8/12/14 at 247.) Second, appellant took unlawful control over and unlawfully moved the victim's car. The Commonwealth, through testimony of Hughes, established that appellant did not have permission to use the

victim's car.[2] (*Id.* at 256.) While defense counsel did establish that Hughes did not mention anything about hearing the victim tell appellant that he was not permitted to use the victim's car when she was questioned by the police, this is a question of weight and credibility that could only have been decided by the jury. The Commonwealth also established through testimony of Mrs. Power and Detective Scott James, who helped process the crime scene, that the victim had plans to use her car in the several days immediately following her death.[3] (*Id.* at 193-194, 360.)

Finally, the Commonwealth presented evidence proving appellant's intent to deprive the victim of her car. After taking the victim's car, appellant used the car to pick up Hughes in Indiana. (*Id.* at 262.) Appellant was later apprehended driving the victim's car on Interstate 70 in Missouri. (*Id.* at 224.) Moreover, at the time of his apprehension, appellant was traveling westbound on Interstate 70 -- traveling away from Pennsylvania when he was apprehended. (*Id.*) Hughes testified that when appellant picked her up in Indiana, appellant stated that he did not want to go back to Pennsylvania; rather, he wanted to go down south. (Notes of testimony,

---

[2] Hughes testified that, during a phone conversation with appellant, she could overhear the victim in the background saying to appellant, "You are not using my car, I'm not going to get her." (*Id.* at 256.)

[3] Mrs. Power had planned to meet the victim at the victim's townhouse on the morning of June 2, 2013, and Detective James testified that the victim's calendar indicated that she had a doctor's appointment scheduled for June 4, 2013. (*Id.* at 360.)

8/12/14 at 262-263.) Mrs. Power also testified that when she called appellant trying to get information about her mother's whereabouts, appellant indicated that he "was on the run." (*Id.* at 202.)

We next turn to appellant's conviction for second-degree murder. Second-degree murder is defined as a criminal homicide "committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). In order for a defendant to be convicted of second-degree murder, the Commonwealth must prove beyond a reasonable doubt that the defendant committed a murder while engaged in the commission of a felony. 18 Pa.C.S.A. § 2502(b). For the purposes of second-degree murder, a "felony" is defined as robbery, rape, deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping. 18 Pa.C.S.A. § 2502(d).

In this case, the underlying felony was robbery, despite the fact that appellant was not charged with robbery. Since appellant was charged with theft by unlawful taking, the Commonwealth is required to establish the additional element of theft by force or threat of force in order to obtain a conviction of second-degree murder with robbery acting as the underlying felony. *See* 18 Pa.C.S.A. § 3701.

Having already discussed the elements for the underlying theft required to prove robbery beyond a reasonable doubt for the charge of theft by unlawful taking, we now only need to address the missing element: force

or threat of force, no matter how slight. This court has defined force within the context of a robbery as, "that of which the victim is aware and by reason of that force, is compelled to part with his property." **Commonwealth v. Bonner**, 27 A.3d 255, 259 (Pa.Super. 2011). The Commonwealth met its burden of proving force by establishing that the victim died face down with her hands and feet bound with duct tape. (Notes of testimony, 8/12/14 at 215.)

The Commonwealth also proved beyond a reasonable doubt that as a result of being bound by appellant, so that appellant could steal the victim's car, the victim died of positional asphyxia. (Notes of testimony, 8/13/14 at 466.) Specifically, Dr. Barbara Bollinger, who completed the autopsy of the victim, testified that the victim died as a result of being bound and placed face down. (**Id.** at 467.) A DNA analysis conducted on a trace of saliva that was found on the victim's shirt was consistent with appellant's DNA profile. (**Id.** at 442.) The Commonwealth also introduced evidence that there were no signs of a break-in or forced entry, and that appellant lived at the victim's house. (Notes of testimony, 8/12/14 at 173, 350, 352.) Finally, the Commonwealth introduced evidence from Hughes, who testified that appellant told her that he killed the victim. (**Id.** at 266.)

Taking this evidence in the light most favorable to the Commonwealth, as the verdict-winner, we find that the Commonwealth has satisfied its burden of proving theft by unlawful taking and second-degree murder

beyond a reasonable doubt, and that the jury's guilty verdicts are fully supported by the evidence, and accordingly cannot be disturbed.

The second issue presented for our review in the instant appeal is whether the trial court erred in instructing the jury on the elements of robbery, a crime with which appellant was not charged, as the underlying felony to support a charge of second-degree murder. Appellant specifically claims that the trial court's decision to instruct the jury on the elements of robbery, despite appellant only being charged with theft by unlawful taking, may have resulted in confusing the jury, thereby warranting a new trial. (Appellant's brief at 15.)

A previous panel of this court has stated that in order to obtain a conviction of second-degree murder, the Commonwealth need not charge a defendant with the underlying felony. ***Commonwealth v. Pasmore***, 857 A.2d 697, 706 (Pa.Super. 2004), quoting ***Commonwealth v. Giles***, 456 A.2d 1356, 1359 (Pa. 1983). Moreover, our supreme court has addressed the issue of whether potential confusion between the charges of "theft" and "robbery" would cause confusion for the jury and, by so doing, warrant a new trial. In ***Commonwealth v. Prosdocimo***, 578 A.2d 1273 (Pa. 1990), our supreme court considered whether a trial court had erred when it instructed the jury on the elements of robbery before the jury deliberated on a second-degree murder charge. ***Id.***

The court stated that a trial judge has considerable discretion in wording jury instructions so long as the jury receives a clear, adequate, and accurate instruction of the law in question. *Id.* at 1274. In ***Prosdocimo***, the trial judge provided jury instructions that defined the underlying felony for a second-degree murder charge as robbery, while also describing the elements of a theft offense. *Id.* at 1275. Our supreme court cited the fact that the trial judge indicated to the jury at least four times that the underlying felony for a second-degree murder conviction was robbery. *Id.* at 1276. Therefore, despite the trial judge providing a definition of robbery and theft in the jury instructions, the inclusion of both definitions did not confuse the jury.

In this case, the trial court's instructions to the jury as related to the second-degree murder charge were as follows:

> The Defendant has been charged with Second Degree Murder, that is, Felony Murder. To find the Defendant guilty of this offense you must find the following three elements have been proven beyond a reasonable doubt:
>
> First, that the Defendant caused the death of Sandra Mulder; second, that the Defendant did so while committing or attempting to commit a robbery; and, third, that the Defendant was acting with malice.
>
> You may find that the Defendant was acting with malice if you are satisfied beyond a reasonable doubt that he committed or attempted to rob her. Because robbery is a crime inherently dangerous to human life, there does not have to be other proof of malice.

> I will now define Robbery. To find the defendant guilty of this offense, you must find that the following two elements have been proven beyond a reasonable doubt:
>
> First, that the Defendant physically took or removed property from the person of Sandra Mulder by force, however slight; and, second, that the Defendant did so in the course of committing a theft.

Notes of testimony, 8/14/14 at 608-609. No reading of the trial judge's instructions could reach the conclusion that the trial judge confused the jury on the definitions of robbery and theft. The trial judge specifically instructed the jury that the underlying felony to reach a second-degree murder conviction was robbery, and not theft. Therefore, any allegation that the jury was confused by the trial judge's instructions is without merit.

For the third and fourth issues presented for our review, appellant claims that the Commonwealth failed to establish a ***prima facie*** case against him in regards to the second-degree murder and theft by unlawful taking charges. As a means of developing his argument, appellant relies solely on arguments that he made previously in his brief challenging his convictions based on the sufficiency of the evidence:

> The same argument presented at the trial by the Commonwealth was presented in its objection to the Appellant's Motion for Dismissal. Accordingly, the Appellant relies on the previous argument above.

Appellant's brief at 15-16.

J. A26029/15

This argument has no merit. Both this court and our supreme court have stated that a conviction of a crime after trial will render any defects in the Commonwealth's case at the preliminary stages immaterial and moot. ***Commonwealth v. Tyler***, 587 A.2d 326, 328 (Pa.Super. 1991); ***Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995).

Here, appellant was held over for trial after a preliminary hearing was held on July 29, 2013, and after the trial court denied appellant's ***habeas corpus*** petition in an opinion and order dated May 14, 2014, which stated that the Commonwealth established a ***prima facie*** case for theft by unlawful taking and second-degree murder. (Trial court opinion, 5/14/14 at 3.) Appellant was then found guilty by the jury on August 14, 2014, thereby mooting any defects in the trial court's decision to hold appellant over for trial. (Notes of testimony, 8/14/14 at 625-626.)

Judgment of sentence affirmed.

Wecht, J. joins the Memorandum.

Platt, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015

- 13 -