J. S35012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                        :           PENNSYLVANIA
             v.          :
                        :
ANTHONY J. LOVETT,        :        No. 1177 EDA 2015
                        :
         Appellant     :

Appeal from the Judgment of Sentence, February 13, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006004-2014

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND MUSMANNO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MAY 06, 2016**

The trial court, sitting as finder-of-fact in this matter following a waiver trial, has summarized the testimony as follows:

> On May 1, 2014, Ms. Daniella Matthews, the manager and sous chef at a Bon Appetit restaurant[1] located at 3417 Spruce Street in Philadelphia was leaving work at about 11:00 or 11:15 p.m., when she observed a cart outside the door to the kitchen that had trash bags, two cases of cheese steaks, two ten pound bags of hot dogs, and a ten pound bag of turkey sausage.  (N.T. 7-8, 10).[Footnote 2]  The cart caught her attention because it was odd that it was located in its location at that time of night.  (N.T. 8).  Upon observing the cart, Ms. Matthews looked into the kitchen and saw someone in the kitchen, which prompted her to enter.  (N.T. 9).

---

[1] Bon Appétit is a management company that provides food services for the University of Pennsylvania ("UPenn").  (Notes of testimony, 12/9/14 at 7.) The kitchen is located in Houston Hall on UPenn's campus.  (**Id.** at 8.)

> [Footnote 2] All references to the record, unless otherwise noted, pertain to the transcript of Appellant's trial on December 9, 2014.

> Once inside, Ms. Matthews encountered Appellant, who, when asked what he was doing in the kitchen, responded, "Well, if I had known you were still here, then I would have waited until you left." (N.T. 10). Although Appellant was an employee at that Bon Appetit location, Ms. Matthews testified he was not supposed to be there at that time of night.[2] Id. Ms. Matthews ordered Appellant to leave the kitchen after telling him that he did not belong there. (N.T. 11). Appellant did as instructed at which time Ms. Matthews checked the kitchen before exiting it. Id. As she left the kitchen, she noticed that the cart containing the aforementioned items was no longer outside the door to the kitchen. Id.

> The next day, Ms. Matthews received a telephone call from Appellant who asked her if she had taken a photograph of him. (N.T. 12). Ms. Matthews told [Appellant] that she had not and directed him not to call her again.[3] Id. A couple of days later, while Ms. Matthews was speaking to police, Appellant texted her and chastised her for lying to police about what she had observed the night he was caught inside the Bon Appetit

---

[2] Appellant worked for Bon Appétit during the daytime hours, and for the facilities department of UPenn at night. (Notes of testimony, 12/9/14 at 9-10, 25-26.) Appellant worked for Bon Appétit from 8:00 a.m. until 4:00 p.m. (**Id.** at 25.)

[3] Specifically, Ms. Matthews testified, "He asked if I took a picture and I explained to him I didn't and did he see me take a picture of him? And he said, No, I didn't think you would do something like that. Then I said, don't call my phone." (Notes of testimony, 12/9/14 at 12.)

kitchen.[4] Id. Ms. Matthews estimated the value of items she saw on the cart to be $150.00 and further indicated that the kitchen was not open to the general public. (N.T. 13, 17).

Mr. Matthew Morett, executive chef at the time the incident herein occurred, was notified by Ms. Matthews that Appellant was observed in the kitchen, a restricted area after hours, and that there had been a cart loaded with product outside the door to the kitchen. (N.T. 18-19). Mr. Morett testified that Appellant was a member of his staff. However, on the date in question, Appellant clocked out at 4:00 p.m., and he was not permitted in the kitchen at the time Ms. Matthews observed him. (N.T. 19). Morett further testified that he conducted an inventory of the kitchen and ascertained that cases of steaks and hot dogs were missing. (N.T. 20).

After completing the inventory, Mr. Morett contacted the police department of the University of Pennsylvania. Subsequent thereto, Mr. Morett was asked by authorities to review certain kitchen items, including pots, food items, and kitchen utensils that had been recovered from Appellant's residence. (N.T. 21-22, 30). Morett indicated that those items were used by Bon Appetit and that Appellant did not have permission to have those items inside his residence. (N.T. 21-23). Morett further testified that police did not find the missing food items inside Appellant's residence. (N.T. 28).[Footnote 3]

---

[4] Ms. Matthews explained,

I received a text message from the defendant on Monday, the following Monday, when I was in the office being interviewed by the detectives and he said in a text message, I can't believe you're in there telling all those lies to the detective. I imagine someone told him that [I] was in there and then he texted me.

Notes of testimony, 12/9/14 at 12.

> [Footnote 3] At the time of the incident, Appellant was also employed by the University of Pennsylvania and had worked from 4:00 p.m. to 11:00 p.m., on the day of the incident. (N.T. 25-26). Mr. [Morett] testified that employees of the University were not permitted inside the kitchen of the restaurant. (N.T. 28-29, 30).[5]

Trial court opinion, 6/24/15 at 2-3.

At docket number CP-51-CR-0006004-2014, relating to the May 1, 2014 incident, appellant was charged with criminal trespass, burglary, theft by unlawful taking, and receiving stolen property ("RSP"). At docket number CP-51-CR-0006003-2014, relating to the items recovered from appellant's residence pursuant to the search warrant, appellant was charged with theft by unlawful taking and RSP. On December 9, 2014, following a non-jury trial, appellant was found guilty of all charges at CP-51-CR-0006004-2014, and found not guilty of the charges at CP-51-CR-0006003-2014. On February 13, 2015, the trial court imposed an aggregate sentence of 11½ to 23 months, plus 5 years of reporting probation. Appellant was granted immediate parole to house arrest so that he could continue to work at his job at a restaurant on Germantown Avenue. (Notes of testimony, 2/13/15

---

5 In addition, Wister Tilghman ("Tilghman") testified that he is a cook for Bon Appétit. (Notes of testimony, 12/9/14 at 31.) In February or March 2014, appellant admitted to Tilghman that he had stolen approximately $50,000 worth of items from Bon Appétit. (*Id.* at 32-33.)

at 7, 10.)  Appellant's sentence was a below-guidelines sentence.  (**Id.** at 6.)
The victim, Bon Appétit, did not seek restitution.  (**Id.** at 11.)

On February 21, 2015, appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence to sustain the charges of burglary, RSP, and theft.  Appellant's post-sentence motion was denied on April 16, 2015, following oral argument on the record.  A timely notice of appeal was filed on April 28, 2015.  On April 29, 2015, appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b).  Appellant timely complied by filing a Rule 1925(b) statement on May 19, 2015, challenging the sufficiency of the evidence to sustain the convictions of burglary, theft by unlawful taking, and RSP.  Appellant did not challenge the sufficiency of the evidence to sustain the trial court's guilty verdict as to the charge of criminal trespass.  On June 24, 2015, the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issue for this court's review:

> Was not the evidence insufficient to convict appellant of burglary, theft by unlawful taking and [RSP] as the Commonwealth failed to prove beyond a reasonable doubt that appellant, a long-term employee in the dining services and facilities departments at [UPenn], stole food where no one saw appellant take the items and they were stored in a University kitchen accessible to many others?

Appellant's brief at 3.

When considering a challenge to the sufficiency of the evidence, this court must view the evidence presented in a light most favorable to the

Commonwealth, the verdict winner, and draw all reasonable inferences therefrom. *Commonwealth v. Ketterer*, 725 A.2d 801, 803 (Pa.Super. 1999). We must then determine whether the evidence was sufficient to permit the fact-finder to conclude that all of the elements of the crimes charged were proven beyond a reasonable doubt. *Id.* Any question of doubt is for the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Id.* at 804.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. George*, 705 A.2d 916, 918 (Pa.Super. 1998), *appeal denied*, 725 A.2d 1218 (Pa. 1998), quoting *Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992) (citations and quotation marks omitted).

Appellant was found guilty of burglary, graded as a felony of the second degree:

> **(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight

> accommodations in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a)(4). "The Commonwealth may prove its case by circumstantial evidence, and the specific intent to commit a crime necessary to establish the second element of burglary may thus be found in the defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." *Commonwealth v. Franklin*, 452 A.2d 797, 799-800 (Pa.Super. 1982) (citations omitted).

Appellant was also found guilty of theft by unlawful taking and RSP. The Crimes Code defines theft by unlawful taking, in relevant part, as follows:

**§ 3921.  Theft by unlawful taking or disposition**

**(a)  Movable property.--**A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

RSP is defined as follows:

**§ 3925.  Receiving stolen property**

**(a)  Offense defined.--**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

> **(b)** **Definition.--**As used in this section the word 'receiving' means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

> To establish the offense of receiving stolen property, the Commonwealth was required to present evidence sufficient to prove beyond a reasonable doubt that (1) the property had been stolen, (2) the accused received the property and (3) the accused knew or had reasonable cause to know that it had been stolen. The Commonwealth may sustain its burden of proof by means of circumstantial evidence.

***Commonwealth v. Worrell***, 419 A.2d 1199, 1201 (Pa.Super. 1980) (citations omitted).

Appellant argues that the trial court's verdict was based on pure speculation and conjecture where no one actually saw him take the food from the Bon Appétit kitchen the night of May 1, 2014. Ms. Matthews saw appellant standing in the kitchen after hours, when he was not authorized to be there; however, she did not see him remove anything from the kitchen or place anything on the utility cart. (Appellant's brief at 11.) Ms. Matthews did not see appellant wheel away the utility cart with the missing food items. (***Id.***) Appellant also argues that his subsequent statements to Ms. Matthews only prove that he knew he was not supposed to be in the kitchen after it was closed for the day; it was not evidence that he stole anything from the kitchen. (***Id.***)

According to appellant, it was just as likely that someone else took the food from the kitchen. (*Id.* at 12.) Appellant contends this is so because the kitchen was accessible to many other people on a daily basis besides appellant. (*Id.*) Appellant explains his subsequent phone call and text message to Ms. Matthews as demonstrating his concern that she would disclose his unauthorized presence in the kitchen. (*Id.* at 12-13.) Appellant points out that none of the missing food items from May 1, 2014, were found in his apartment. (*Id.* at 13.) Appellant also argues that his admission to Tilghman that he had stolen $50,000 worth of goods from Bon Appétit related to prior alleged thefts, not the May 1, 2014 incident. (*Id.*) Appellant argues that the circumstantial evidence adduced by the Commonwealth at trial was insufficient to prove beyond a reasonable doubt that he took the missing items from the kitchen on the night of May 1, 2014. (*Id.* at 13.) We disagree.

The trial court relied on *Commonwealth v. Haines*, 442 A.2d 757 (Pa.Super. 1982), which we agree is instructive. In that case, the defendant asked the clerk to get a hardware item for him, and the clerk walked to the rear of the store and up some stairs to find the item. *Id.* at 759. He was absent from the main store area for between three and five minutes during which time the defendant was alone in that part of the store. *Id.* The clerk testified that when he returned, he told the defendant that he did not have the part in stock, and the defendant left the store. *Id.* When the

storeowner returned from lunch a short time later, he noticed that two chain saws were missing. *Id.* As in this case, no one actually saw the defendant take the items. *Id.* During the course of their investigation, police discovered that a chain saw was being repaired at a garage and that the serial number of that saw was the same as that of one of the missing saws. *Id.* The saw was traced to a Richard Seawood, who testified that he bought the chain saw from an unidentified man sent by the defendant. *Id.* The defendant testified and corroborated the fact that he did not know the man's name. *Id.* (citations to the transcript omitted). The trial judge did not find the testimony of either the defendant or Seawood to be credible, and found the defendant guilty of theft by unlawful taking and RSP. *Id.*

On appeal, this court affirmed, stating,

> While it is true as the trial court noted that there was no evidence unquivocally placing the chain saws in the hands of defendant, we hold that the Commonwealth, albeit circumstantially, sustained its burden to prove beyond a reasonable doubt that defendant was guilty of theft. A defendant is guilty of 18 Pa.C.S.A. § 3921(a) "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." We hold that the trial court's verdict was premised upon a reasonable inference from the evidence that the saws were taken during the hour defendant was in the store and from the evidence connecting defendant to the recovered saw. Since there was sufficient evidence to convict defendant of theft by unlawful taking or disposition, it necessarily follows that the evidence was also sufficient to convict him of receiving stolen property.

*Id.* at 759-760.

Similarly, here, although no one actually saw appellant take anything, he was alone in the kitchen, after hours, when Ms. Matthews observed the cart laden with food outside the kitchen door. (Notes of testimony, 12/9/14 at 8-9.) Ms. Matthews told appellant he was not supposed to be there and he should leave. (*Id.* at 11.) After appellant left, Ms. Matthews inspected the kitchen to make sure it was empty, then clocked out and left. (*Id.*) At that time, the cart was gone. (*Id.*)

In addition, appellant's subsequent contacts with Ms. Matthews could fairly be construed as consciousness of guilt. While appellant chooses to characterize the phone call and text message to Ms. Matthews as relating to his fear of being turned in for being in the kitchen after hours, the trial court, as finder-of-fact, could make a reasonable inference that appellant was afraid of being reported to police for stealing food. In fact, the trial court did find that appellant's comments to Ms. Matthews were evidence of consciousness of guilt. (Trial court opinion, 6/24/15 at 6.)

Appellant argues that the food that was reported stolen was not found in his apartment when police executed the search warrant. However, the search warrant was not executed until May 7, 2014, nearly one week later. (Notes of testimony, 12/9/14 at 30.) This was ample time to dispose of the items. In addition, the stolen items included perishable foodstuffs such as cheesesteaks, hot dogs, and sausage. (*Id.* at 8.) The fact that these items

were not recovered from appellant's apartment nearly one week later is not persuasive of appellant's innocence.

Furthermore, although he was found not guilty of the charges at CP-51-CR-0006003-2014, the trial court was free to consider the testimony that additional items, including commercial kitchen utensils matching the brand used by Bon Appétit, were recovered from appellant's apartment. (Notes of testimony, 12/9/14 at 21-22.) Appellant also admitted to Tilghman in February or March 2014 that he had stolen things from Bon Appétit. (*Id.* at 32-33.) While this evidence did not relate specifically to the May 1, 2014 theft, it was admissible under Pa.R.E. 404(b) as evidence of a common plan, scheme, or design. In addition, on sufficiency review, this court reviews all evidence actually received, without regard to admissibility. Examining the totality of the evidence, in the light most favorable to the Commonwealth, together with all reasonable inferences, it was clearly sufficient to meet all the elements of the crimes charged.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016