J-S49002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALFRED C. CARRERA, II :
:
Appellant : No. 325 MDA 2018

Appeal from the Judgment of Sentence January 31, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000132-2017

BEFORE: SHOGAN, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 05, 2018**

Appellant, Alfred C. Carrera, II, appeals from the judgment of sentence

entered on January 31, 2018, in the Dauphin County Court of Common Pleas.

We affirm.

The trial court summarized the factual background of this matter as

follows:

> On November 13, 2016, Doris Louey stopped at the
> Hardee's in Middletown to grab a bite to eat. (Notes of Testimony,
> Jury Trial, 12/4/17-12/5/17[1], p. 45). She was driving a 2006
> Dodge Durango she owned with her ex-husband. (N.T. 48). There
> were a few other customers there that evening, specifically, one
> couple at a table behind her who seemed to be arguing. (N.T. 47,
> 51). Ms. Louey realized she left her cell phone in her car, so while
> she was waiting for her food, she went to her car, grabbed he[r]
> phone and then came back in. She set her keys and wallet on the
> table in front of her. (N.T. 46-47). She began texting her boyfriend
> when the man at the table (Appellant) rushed over, grabbed her
> keys and wallet and [the couple] ran out of the Hardee's. (N.T.
> 47). She did not recall whether Appellant said anything to her or
> whether she said anything to him at that point. (N.T. 52).

_____
* Former Justice specially assigned to the Superior Court.

Ms. Louey ran after them and saw the man[, later identified as Appellant,] getting into [the] driver's seat and the woman[, later identified as Lisa Dawn Smith,] getting into the passenger seat. (N.T. 47). She grabbed the passenger door and said something to the effect of "You can't take my car. Don't take my car!" (N.T. 47). The man then looked at the passenger side and yelled "Get the fuck away, bitch, or I'll shoot you!" while motioning toward his side, as if reaching for a gun. (N.T. 47). She believed he had a gun, but she never saw a gun. (N.T. 56, 65). Ms. Louey backed off and called the police. (N.T. 48). Ms. Louey recalled that Appellant motioned towards his side with his right hand, while his left hand was on the wheel. (N.T. 64).

Ms. Louey recalled that Appellant was wearing a green sweater with the hood up. (N.T. 55). Three days later, police called Ms. Louey to tell her that her vehicle had been recovered and was in an impound lot. (N.T. 56-57). The vehicle had been in an accident and was severely damaged, with a different license plate, but Ms. Louey was able to identify it as hers. (N.T. 58-59).

Ms. Louey did view a photo array and originally picked out someone other than Appellant, but upon a second viewing, she identified Appellant as the man who took her car. (N.T. 67, 78). She was able to identify the woman accompanying him, Ms. Smith, in a photo array for her. (N.T. 77). She also saw articles on Facebook about the event which identified Appellant. (N.T. 68). She testified that her identification of Appellant was based on her recollection of what had happened, not the photo array or Facebook posts. (N.T. 68).

Former Detective Sergeant Richard Heister testified that he was called in to do forensic work at the Hardee's, but they were unable to glean any forensic evidence from the scene. (N.T. 72, 74). He did create the photo arrays that Ms. Louey viewed and was with her when she identified Ms. Smith and also as she ultimately identified Appellant. (N.T. 74). Heister also responded to the Emergency Room when Appellant was taken there. (N.T. 78). Appellant spoke to Heister and said he didn't threaten anyone, he just stole a car. (N.T. 79). Heister indicated that no gun was ever[] found. (N.T. 78).

Surveillance photos from a local Giant grocery store showed the Dodge Durango in the parking lot. Appellant entered the store, then exited the store, then the Dodge Durango left the lot. (N.T. 80-81).

Brant Maley, of the Penbrook Police Department, testified. (N.T. 81). Penbrook Police are often called in to assist other local jurisdictions. (N.T. 82). On November 16, 2016, Officer Maley was informed that a gray Dodge Durango that was stolen from Middletown might be in the Penbrook area. (N.T. 83-84). About two hours later, around 8:17 p.m., he received word that the vehicle was going to be on Kunkel Street, in Harrisburg City. Harrisburg Police found the vehicle nearby and a chase ensued. (N.T. 84-85). Maley was accompanied by a probation officer. (N.T. 83). Maley was dispatched to assist in the pursuit. (N.T. 85). He located the vehicle in the Bellevue Park neighborhood with its headlights off. (N.T. 85-86). He notified dispatch that he had spotted the vehicle and continued to follow it. (N.T. 87). Maley did not activate his lights and sirens because we was waiting for other officers to respond. (N.T. 88). He continued to follow the vehicle to 29th Street and Revere Street in Harrisburg which is when he activated his lights and siren, which simultaneously activated his mobile video recorder. (N.T. 89).

The vehicle continued to flee on Interstate 283 South. The police cruiser showed a speed of over 100 miles per hour. (N.T. 92). The pursuit continued into the Chambers Hill area, at which point the Penbrook chief told Maley to stop pursuit. (N.T. 93). Pursuant to policy, Maley pulled over and remained in that location for a minute before moving up the road about a half mile. (N.T. 93-94). The pursuit lasted in excess of nine minutes with various jurisdictions, including Pennsylvania State Police, Swatara Township police, Lower Swatara Police, Middletown Police and Harrisburg City Police all responding. (N.T. 96-97).

He then received a dispatch that the vehicle was involved in a collision at Paxton Street and City Park Drive. (N.T. 94). This collision occurred near a probation center with security cameras so Maley and the probation officer tried to get that center on the phone to ask if they could see anyone fleeing the accident scene. (N.T. 95). They received reports of a female in a gray sweatshirt and a male in a white shirt fleeing the scene in opposite directions. (N.T. 95). They also received a report that both suspects fled in a northerly direction. (N.T. 98).

Maley helped set up a perimeter. (N.T. 98). Following a foot chase, Officer Jesse Foltz of Penbrook Police, took Appellant into custody. (N.T. 100). Officer Foltz testified that he responded to the area of the crash to set up the perimeter (N.T. 114 ). As he responded, he saw a state trooper running as if he were chasing someone so Foltz hopped out of his vehicle to assist. (N.T. 115). He saw a man slinking around a home and then running eastbound. (N.T. 115). Foltz pursued him and ordered him to stop. The man[] generally complied with his orders. (N.T. 115). Foltz and the man were separated by a fence so another officer took the man, Appellant, into custody while Foltz looked on. (N.T. 115).

Lisa Dawn Smith testified on Appellant's behalf. (N.T. 119). Ms. Smith was Appellant's ex-fiancee [sic] and co-defendant in the case. (N.T. 119-120). She recalled exiting the Hardee's in Middletown and then Appellant ran out behind her and told her to get in the Dodge. (N.T. 120). She climbed in and Ms. Louey grabbed the door handle. (N.T. 120). Appellant yelled at Ms. Smith "Shut the fuckin' door." (N.T. 120, 124-125). She insisted that Appellant yelled this at her a[n]d not at Ms. Louey. (N.T. 125). In fact, she said that Appellant did not speak to Ms. Louey at all. (N.T. 125). She and Appellant were together for about five years and she never saw him with a gun. She testified that he did not have a gun on this date. (N.T. 127-128).

Ms. Smith pleaded guilty to charges related to this incident. (N.T. 126-127).

Appellant testified on his own behalf. (N.T. 140). He admitted to a length[y] criminal history as well as a serious drug addiction. (N.T. 140). His criminal history began in 2008 and includes various thefts and robberies through the date of this incident. (N.T. 141-142).

Appellant testified that he and Ms. Smith were high on crack that day and joking about needing a car. (N.T. 143). When Ms. Louey came into the Hardee's he decided to take her car. (N.T. 144). He adamantly denied having a gun or intending to threaten or harm her; in fact, he specifically noted that he did not want any sort of confrontation. (N.T. 144). He grabbed her keys off the table and ran out to the car, telling Ms. Smith to jump in. (N.T. 144). He started the car and saw Ms. Louey coming out of the restaurant. (N.T. 144). He recalled Ms. Louey yanking the

passenger door open, and since he is left handed he was sitting in a manner which he believes made Ms. Louey think he was grabbing for something (N.T. 144-145). As Ms. Louey opened the door, he yelled at Ms. Smith to shut the door and then he looked Ms. Louey in the eye. (N.T. 145). Per Appellant, "And Ms. Louey, I saw her face. That's why I think she really believes I said this. I really believe she says that. I'm not saying she's trying to be vindictive. I really think the woman said this -- thinks I said this, but I didn't. And she made a face like this and backed up from the car." (N.T. 162).

Appellant admitted to taking the keys and wallet from Ms. Louey's table with the intent to take her car. (N.T. 145). According to Appellant "I did everything I'm accused of except for the threaten her. That's the only thing I didn't do. Everything else I did." (N.T. 145).

Appellant testified that he could have backed out and left faster, but he saw Ms. Louey exiting the Hardee's and he did not want to accidentally hit her. (N.T. 147). He recalled that he was wearing a green pullover sweater at the time. (N.T. 148). Appellant said that he and Ms. Smith were addicted to drugs, on the run, and felt like caged animals so they took the car to escape. (N.T. 150).

Trial Court Opinion, 4/3/18, at 1-6.

Appellant was charged with robbery of a motor vehicle, theft by unlawful taking, and terroristic threats.[1]  Following a jury trial, Appellant was found guilty of all charges.  On January 31, 2018, the trial court sentenced Appellant to a term of twenty-five to fifty years of incarceration for robbery of a motor vehicle as a "third-strike offender" pursuant to 42 Pa.C.S. § 9714(a)(2).  The theft conviction merged for sentencing purposes, and the trial court imposed a sentence of five years of probation for terroristic threats.  Appellant did not

_____

[1] 18 Pa.C.S. §§ 3702, 3921(a), and 2706(a)(1), respectively.

file a post-sentence motion and filed a timely notice of appeal on February 15, 2018. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues for this Court's consideration:

1. Whether the Commonwealth failed to provide sufficient evidence at trial to support the guilty verdict on the charge of Robbery of a Motor Vehicle?

2. Whether the verdict was against the weight of the evidence presented at trial?

3. Whether the Appellant was sentenced to an illegal sentence?

4. Whether the sentence received was excessive?

Appellant's Brief at 5.

In Appellant's first issue, he challenges the sufficiency of the evidence with respect to his conviction for robbery of a motor vehicle. Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier

of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Sauers*, 159 A.3d 1, 11 (Pa. Super. 2017). The crime of

robbery of a motor vehicle is defined as follows:

> **(a) Offense defined.--**A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle.

18 Pa.C.S. § 3702(a). **Robbery** of a motor vehicle has additional elements

and is distinct from **theft** of a motor vehicle. *Commonwealth v. George*,

705 A.2d 916, 919 (Pa. Super. 1998). Therefore, the Commonwealth must

prove the following elements:

> (1) the stealing, taking or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be accomplished by the use of force, intimidation or the inducement of fear in the victim.

*Id.* at 919-920.

> At trial, Ms. Louey testified as follows:

> So I sat down and I'm texting my boyfriend. And I could hear [Appellant and Ms. Smith] talking. I don't know what they were discussing or anything. But next thing I know, he rushed over, grabbed my keys and my wallet off the table, ran out the door. So of course my first instinct was to run after him. He went around the back of my car, because I was parked at the second parking spot, and was getting in. And she was trying to get in the passenger door. And as she got in, I grabbed the door and I said: Don't take my car.

> I don't even remember my exact wording, but it was: Don't take my car, please. You know: You can't do this.

And at that time the girl didn't say a word. She just sat in the seat. She didn't - - you know, she didn't -- I don't even remember she looked at me or anything. She just sat in the seat. And he said: Get the fuck away, bitch, or I'll shoot you.

And he patted his side like he must have had something in — a weapon, a gun, something inside his pants or his jacket pocket. So of course at that point I'm not going to say, let me - - I can't say: I wanna see it; let me see it. Do you really have a gun?

So I backed off. That's exactly what I did. I backed off and I watched them drive away. And I'm calling 911 and I'm saying: My car was just stolen. I'm here at the Hardee's in Middletown and someone took my car.

N.T., 12/4-5/17, at 47-48.

Appellant also testified at his trial. He admitted that he stole Ms. Louey's keys and wallet from her table in the restaurant, ran outside, and drove away in her vehicle. N.T., 12/4-5/17, at 144-145. Despite Appellant's claim that he did not have a gun and that he yelled at Ms. Smith and not Ms. Louey,[2] the jury was free to believe some, all, or none of the evidence. *Sauers*, 159 A.3d at 11. Ultimately, the jury opted to find Ms. Louey's testimony credible as it was free to do. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish that Appellant stole Ms. Louey's vehicle in Ms. Louey's presence, and he did so by inducing fear in Ms. Louey by threatening to shoot her while he drove away in her car. Accordingly, the

_____

[2] Appellant's Brief at 13.

Commonwealth established the elements of robbery of a motor vehicle. *George*, 705 A.2d at 919.

Next, Appellant purports to challenge the weight of the evidence. However, in order to preserve a challenge to the weight of the evidence, the Pennsylvania Rules of Criminal Procedure require an appellant to raise the issue in a motion made orally on the record prior to sentencing, in a written motion at any time before sentencing, or in a timely post-sentence motion. Pa.R.Crim.P. 607(A). Our review of the record reveals that Appellant failed to preserve his weight of the evidence argument pursuant to Rule 607; therefore, Appellant waived his challenge to the weight of the evidence. ***Commonwealth v. Roche***, 153 A.3d 1063, 1071 (Pa. Super. 2017).

In his third issue on appeal, Appellant avers that his sentence was illegal. "The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." ***Commonwealth v. Atanasio***, 997 A.2d 1181, 1183 (Pa. Super. 2010).

Appellant had prior convictions for aggravated indecent assault in 1996, and robbery in 2014. On January 31, 2018, the trial court sentenced Appellant to a term of twenty-five to fifty years of incarceration for robbery of a motor vehicle. This sentence was imposed because Appellant's conviction for

robbery of a motor vehicle constituted his "third strike" under 42 Pa.C.S. § 9714(a)(2).[3]

Appellant first argues that aggravated indecent assault was not included in Section 9714 until 2000. Appellant's Brief at 20. Appellant avers that because his aggravated indecent assault conviction occurred in 1996 and predated the crime's inclusion in the three strikes law, the conviction should not count as a strike for purposes of Section 9714. *Id.* at 21. We disagree.

The imposition of a mandatory minimum sentence pursuant to Section 9714, which counts a conviction that occurred before the enactment of the statute as a strike, is not an unlawful retroactive application of law. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa. Super. 2008) (citing *Commonwealth v. Smith*, 866 A.2d 1138 (Pa. Super. 2005)). Therefore, Appellant's 1996 aggravated-indecent-assault conviction was correctly counted as a strike pursuant to Section 9714, and Appellant's argument to the contrary is meritless.

Appellant also argues that his prior robbery conviction should not count as a strike for purposes of 42 Pa.C.S. § 9714(a)(2). Appellant's Brief at 22. Appellant asserts that when he entered his guilty plea to robbery in 2014, the

---

[3] "Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement[.]" 42 Pa.C.S. § 9714(a)(2).

Commonwealth waived the personal injury element of the crime, and therefore, it was not a crime of violence. *Id.*

The Commonwealth refuted Appellant's contention prior to sentencing:

In 2014, the Commonwealth waived [Appellant's] SIP [(State Intermediate Punishment)] ineligibility so that he could participate in the SIP program. The Commonwealth did not waive the personal injury element of the Robberies. That is not even possible. If the Commonwealth had done that (or could do that), then the charge would have been changed. When an offender has a crime that makes him SIP ineligible, and the Commonwealth waives ineligibility, the Commonwealth is only waiving their ineligibility to enter the [SIP] program.

Commonwealth's Response to [Appellant's] Sentencing Memorandum, 1/24/18, at 3.

In its opinion, the trial court addressed this issue as follows:

Appellant argues that since the Commonwealth waived the personal injury element of the 2014 Robbery to make [Appellant] SIP eligible, he was not found guilty of a crime of violence as defined by the three strikes law. However, the Commonwealth was actually waiving Appellant's ineligibility for SIP due to crimes of violence so as to permit him to enter SIP. The personal injury aspect was waived for sentencing purposes. He was found guilty of a crime of violence.

Trial Court Opinion, 4/3/18, at 8.

After review, we agree with the trial court that this waiver affected sentencing only. In 2014, Appellant pleaded guilty to and was convicted of committing robbery under 18 Pa.C.S. § 3701(a)(1)(ii),[4] an offense enumerated as a strike under 42 Pa.C.S. § 9714(g). Nothing in the record

_____

[4] N.T., Guilty Plea, 1/31/18, at 3-4.

- 11 -

reveals that the Commonwealth waived an element of the 2014 robbery making it a nonviolent crime; rather, the Commonwealth waived the crime-of-violence prohibition for sentencing purposes and Appellant's ineligibility for State Intermediate Punishment. N.T., 8/29/14, at 3. Accordingly, we conclude that Appellant's 2014 robbery conviction counted as a strike under Section 9714.

In the final component of Appellant's third issue on appeal, he claims that he was never sentenced as a first or second-strike offender, and therefore, he never received notice of a mandatory sentence under Section 9714. Appellant's Brief at 25-26. Appellant's argument is meritless.

Section 9714 clearly announces that notice is not required: "Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required." 42 Pa.C.S. § 9714(a)(2). Section 9714 continues, in relevant part, as follows:

> Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. …

42 Pa.C.S. § 9714(d).

As the trial court points out, Appellant's Sentencing Memorandum, filed two weeks prior to sentencing, reveals his knowledge that he faced being sentenced as a third-strike offender. Trial Court Opinion, 4/3/18, at 8;

Appellant's Sentencing Memorandum, 1/16/18, at unnumbered 1-7. Accordingly, Appellant's lack-of-notice argument is meritless.

Tangentially, Appellant also revisits the previously addressed claims that his 1996 and 2014 convictions should not count as first and second strikes. Appellant posits that, if those prior convictions are not first and second strikes, then he had no notice of the instant conviction constituting a third strike. Appellant's Brief at 25-26. Because we have already found that Appellant's 1996 and 2014 convictions constituted strikes under Section 9714, we conclude that this issue is without merit, and Appellant is entitled to no relief.

In his final issue, Appellant avers that his sentence is excessive. Appellant's Brief at 26. A claim that a sentence is manifestly excessive challenges the discretionary aspects of a sentence. *Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa. Super. 2017).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right; this challenge is properly viewed as a petition for allowance of appeal. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987). An appellant challenging the discretionary aspects of his sentence must satisfy a four-part test. We evaluate: (1) whether Appellant filed a timely notice of appeal; (2) whether Appellant preserved the issue at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal; and (4) whether the

concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013).

In the instant case, Appellant filed a timely appeal, and his brief contains a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). However, we agree with the Commonwealth that Appellant did not preserve this issue at sentencing or in a post-sentence motion. Commonwealth's Brief at unnumbered 6. Accordingly, Appellant waived his challenge to the discretionary aspects of his sentence. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1273-1274 (Pa. Super. 2006) ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/05/2018

- 14 -