J-A10035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.H., MINOR | : | |
| | : | |
| | : | |
| | : | No. 1461 EDA 2024 |

Appeal from the Dispositional Order Entered May 7, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0001426-2022

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 22, 2025**

Appellant, N.H., a juvenile, appeals from the dispositional order adjudicating him delinquent for robbery of a motor vehicle, conspiracy to commit robbery of a motor vehicle, theft by unlawful taking, theft by receiving stolen property, and unauthorized use of a motor vehicle.[1]  He asserts that the juvenile court erred by not suppressing out-of-court and in-court identifications of him by the victim and that the evidence was insufficient for robbery of a motor vehicle because the Commonwealth failed to prove that a taking of the victim's car was accomplished by force.  Upon review, we affirm.

On May 2, 2023, Appellant's counsel made an oral motion to suppress identifications of him made by the victim, Lanique Dale.  ***See*** N.T. Suppression

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3702(a), 903(c)/3702(a), 3921(a), 3925(a), and 3928(a), respectively.

Hearing, 5/2/23, 7-8. Appellant argued that there was no reasonable suspicion or probable cause for his arrest, he was unlawfully stopped and arrested, and the victim's out-of-court identification of him was thus the "fruit of [an] unlawful arrest." *Id.* at 8. He additionally sought suppression on the basis that the out-of-court identification was "improper and unduly suggestive." *Id.* On those grounds, he sought suppression of the victim's prior out-of-court identification of him and any in-court identification that the victim would subsequently offer. *See id.*

Police Officer Michael Kane testified that, at around 7:15 p.m. on November 9, 2022, he was on duty and responded to a report of "a theft in progress [involving] a stolen vehicle" near the 6000 block of Agusta Street in Philadelphia. N.T. Suppression Hearing, 5/2/23, 11. There, Officer Kane met the victim, Ms. Dale. *See id.* at 11. Ms. Dale reported that she had been delivering packages at that location in the vehicle that had been stolen: a 2017 cream Toyota Camry with a Delaware temporary license plate and tinted rear windows. *See id.* at 11-12, 17.

At 8:20 p.m., Officer Kane came into contact with a car matching the victim's description while it was turning into a rear alleyway off of the 900 block of Marcella Street, about one half-mile away from where Ms. Dale's car was stolen. *See* N.T. Suppression Hearing, 5/2/23, 13-15, 18-19, 23. Officer Kane saw Appellant sitting in the driver's seat of the car, which had its engine running and its key in it, and another male, dressed all in black, walking westbound from the car. *See id.* at 14-16. Officer Kane then stopped

- 2 -

Appellant, placed him in handcuffs, and removed him from the car for the purpose of confirming that the vehicle was Ms. Dale's by checking its VIN number because Ms. Dale was unable to provide the temporary license plate number for the car. *See id.* 13, 16, 20-21. Officer Kane confirmed it was Ms. Dale's car through the VIN number and, within fifteen to twenty minutes of Appellant being placed in the officer's patrol car, Ms. Dale was brought to that location by other police officers and made a positive identification of Appellant. *See id.* at 22, 24. She confirmed that he "drove away with her car." *Id.* at 23-24.

Ms. Dale testified and identified Appellant as a person she came into contact with at around 7:15 p.m. on November 9, 2022. *See* N.T. Suppression Hearing, 5/2/23, 37-38. She explained that, at that time, she was delivering packages for Amazon and, when she went to remove a package from her car's trunk, she realized a few individuals were "branching around the cars," and one, who she identified as Appellant, jumped in the open front driver's side door of her car and closed it. *Id.* at 38-39. While the light was on inside the car, Ms. Dale approached the passenger side door and the person in the driver's seat of the car started it. *Id.* at 39, 41-42. That person then drove off and picked up the rest of his associates before leaving the scene. *Id.* at 39. Ms. Dale identified Appellant as the person "going in [her] car." *Id.* Ms. Dale confirmed that she was able to see Appellant for "a few seconds" to "[m]aybe a minute" before he drove away. *Id.* at 41. She noted, "He had

his mask up because they all had on masks," but that she was able to see him "[v]ery clearly." *Id.*

As for her out-of-court identification of Appellant, Ms. Dale noted that she was transported to that location in a police car and that she identified Appellant after he was removed from a separate police car. N.T. Suppression Hearing, 5/2/23, 42-43. She testified that she was "very sure" that Appellant was the same person who drove away in her car, and recalled telling the officers, "[T]hat's him." *Id.* at 43. She noted that she recognized him based on "a twist in his hair," "his skin complexion," "his looks," and that he "was in the same clothes" he had on at the time that he took her car. *Id.* at 43-44. On cross-examination, she described his clothes as a "black hoodie and black pants." *Id.* at 44.

After hearing the testimony of Officer Kane and Ms. Dale, which included the presentation of body camera footage from Officer Kane, and considering the arguments of counsel, the court denied the suppression motion. *See* N.T. Suppression Hearing, 5/2/23, 57. The suppression court's subsequent findings of facts largely tracked the above summary of the suppression hearing testimony and noted, *inter alia*, that, "[u]ntil [Appellant] jumped in [Ms. Dale's] car, he had been wearing a mask, but he pulled the mask up to start and drive the car." Suppression Court Opinion, 10/7/25, 3-4. The court concluded that, based on a totality of the circumstances, the victim's out-of-court identification of Appellant was reliable and not unduly suggestive, and that the victim's in-court identification was properly admitted where it had not

been tainted by the reliable out-of-court identification. *See id.* at 5. The court found that there was reasonable suspicion to stop and detain Appellant and probable cause to arrest him where the car he was in matched the car reported as stolen and he was located only one mile away from where the officer had met the victim. *See id.* at 6. Moreover, the court noted that, "after Officer Kane confirmed the VIN number, probable cause was bolstered." *Id.*

Appellant proceeded to a dispositional hearing on May 7, 2024, before a different judge, at which the Commonwealth again presented testimony from Ms. Dale and Officer Kane. Their testimony tracked their earlier testimony from the suppression hearing. Ms. Dale again identified Appellant as the person who jumped into her car before it was taken from her. *See* N.T. Dispositional Hearing, 5/7/24, 11. She noted that she was able to see his face at that time, with the interior light on in the car, because Appellant pulled up the mask he was wearing to reveal his face, before he started driving the car. *See id.* at 13-14; *see also id.* at 32 (Ms. Dale noting that Appellant pulled his mask up to the "top of his forehead"). She agreed that she was "tugging on the door handle" of her car for "a few seconds" before Appellant drove off. *Id.* at 12-14. She confirmed that her out-of-court identification of Appellant took place after the police discovered her car. *See id.* at 20-21. She noted that she was able to identify Appellant because she was able to see his face when he took her car. *See id.* at 21 ("I saw his face, because he had pulled the [mask] up to put the car in drive, I guess, and I saw his face.").

On police body camera footage from the scene of the in-person identification, that was played at the dispositional hearing, Ms. Dale told the police, "I saw his color and his nose and his face when I looked in the car." *Id.* at 23-24.

After the presentation of the testimony from Ms. Dale and Officer Kane, which included the playing of the body camera footage from Officer Kane, the juvenile court found that the Commonwealth met its evidentiary burden for the above-referenced charges. *See* N.T. Dispositional Hearing, 5/7/24, 51-52. The court adjudicated Appellant delinquent and placed him on probation until further order with GPS monitoring and housing restrictions. *See id.* at 64-68; Order (adjudication and disposition), 5/7/24, 1-2. The court also ordered an outpatient referral for family functional therapy, Appellant to prepare a written apology to Ms. Dale, and restitution to cover damage sustained to Ms. Dale's car and loss of personal property that was not recovered from the car. *See* N.T. Dispositional Hearing, 5/7/24, 68-71; Order (adjudication and disposition), 5/7/24, 1-2.

Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *See* Notice of Appeal, 5/28/24, 1; Order (Rule 1925), 6/26/24, 1; Rule 1925(b) Statement, 7/15/25, 1-3. The juvenile court has filed an opinion for our review. *See* Juvenile Court Opinion, 8/21/24, 1-13. After a prior remand, the suppression court prepared its own opinion, including its findings of fact and conclusions of law which it failed to state on the record at the suppression hearing pursuant to Pennsylvania Rule of

Juvenile Court Procedure 350(C). **See** Suppression Court Opinion, 10/7/25, 1-7; **Interest of N.H.**, 2025 WL 2427170 (Pa. Super., filed Aug. 22, 2025) (judgment order) (1461 EDA 2024). The parties both availed themselves of the opportunity to file supplemental briefs following the filing of the suppression court's opinion.

Appellant presents the following questions for our review:

A.      Did the [juvenile] court err in denying Appellant's motion to suppress the complainant's out-of-court identification, because the circumstances were unduly suggestive, and the identification was insufficiently reliable?

B.      Did the [juvenile] court err in denying Appellant's motion to suppress the complainant's in-court identification, because it was the fruit of the unlawful out-of-court identification and was insufficiently independently reliable?

C.      Did the [juvenile] court err in entertaining an adjudication of delinquency where the evidence was insufficient to establish that [Appellant] committed the act of robbery of a motor vehicle, as there was no evidence that he removed the vehicle from the complainant by force?

Appellant's Brief, 3-4 (answers of the juvenile court omitted).

In his first two issues, which we will address together, Appellant challenges the trial court's denial of his motion seeking the suppression of the victim's out-of-court and in-court identifications of him as the person who drove away in her car. **See** Appellant's Brief, 24-36, Appellant's Reply Brief, 2-13; Appellant's Supplemental Brief, 2-8.

With respect to the out-of-court identification at the scene of the police recovery of the car, Appellant argues that the identification was the result of

an unduly suggestive procedure and, as a result, that identification was insufficiently reliable. *See* Appellant's Brief, 24-33. First, he asserts that the Commonwealth failed to meet its burden to show that the identification procedures were not suggestive because it did not present the testimony of the officers who conducted the show-up identification and instead only presented the testimony of Officer Kane who was with Appellant at the time of out-of-court identification. *See* Appellant's Brief, 25-26. Second, he argues that the out-of-court identification procedure was unduly suggestive because: (1) the officers supposedly knew that Appellant did not match the victim's description; (2) the officers showed Appellant to the victim after having her identify her recovered car and its contents "in the presence of multiple police cars;" (3) the officers conducted the show-up identification after they supposedly knew that the victim had told them that she did not see the person who drove away in her car; (4) Appellant was led out of the back of a police car in handcuffs for the identification; and (5) it was a "one-on-one confrontation." Appellant's Brief, 26-27. Because he concludes that his in-court identification was "the fruit of [an] improper out-of-court identification," he additionally asserts that the suppression court should have suppressed any in-court identification from the victim. Appellant's Brief, 34-36.

Our standard of review of a ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Rosario*, 248 A.3d 599, 607 (Pa. Super. 2021) (citation omitted). We are

bound by the facts found by the suppression court so long as they are supported by the record, but we review its legal conclusions *de novo*. **See id.** at 607-08. "Where, as here, the [appellant] is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record[.]" **Commonwealth v. Wright**, 314 A.3d 515, 531-32 (Pa. Super. 2024) (citation omitted).

As for the focus of Appellant's challenge to the out-of-court identification process, we note that:

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

**Commonwealth v. Mbewe**, 203 A.3d 983, 986-87 (Pa. Super. 2019) (citations and quotation marks omitted). Further,

> In deciding whether to admit contested identification evidence, the trial court must consider: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of [her] prior description of the perpetrator at the confrontation; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation.

*Commonwealth v. Milburn*, 191 A.3d 891, 899-900 (Pa. Super. 2018). "The most important factor in addressing the reliability of an identification is the witness's opportunity to observe the perpetrator at the time of the crime." *Id.* at 900. "Absent some special element of unfairness, a prompt one-on-one identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." *Commonwealth v. Brown*, 611 A.2d 1318, 1321 (Pa. Super. 1992); *see also Commonwealth v. Wade*, 33 A.3d 108, 114 (Pa. Super. 2011) (same).

Here, the suppression court denied Appellant's motion because it concluded that the out-of-court identification "was reliable and not unduly suggestive," and that the in-court identification "ha[d]not been tainted by the reliable out-of-court identification." Suppression Court Opinion, 10/7/25, 5. In particular, the court determined that four of the *Milburn* factors were satisfied. As for the first factor, the court found that the victim was able to adequately view Appellant in the time before he drove away in her car. *See id.* ("The Complainant … was able to view [Appellant] at the time of the crime when he removed his mask in the car prior to driving away."). As for the second factor, the court concluded that the victim had a "high" degree of attention "when she was watching [Appellant] in her car and when she identified him." *Id.* With respect to the fourth factor, concerning the level of certainty at the confrontation, the court notes that "[s]he testified that she was very sure when asked if that was the perpetrator and specifically stated, '[T]hat's him.'" *Id.* (record citation omitted). By remarking, "the time

between the crime and the confrontation was only approximately one hour," the court's use of "only" suggested that it found that there was no undue delay in the out-of-court identification process.

As for the identification procedures used, the court did not find that the handcuffs on Appellant at the time of the out-of-court identification had any effect on the victim's identification or that the identification process employed by the police created a threat of impermissible suggestiveness:

> In the [i]nstant case, [Appellant] was in handcuffs at the time of the identification. However, the [c]omplainant stated that she did not even notice that he was in handcuffs. The identification was made at a show-up where [Appellant] had just exited a police vehicle. [The Superior Court, in **Commonwealth v. Moye**, 836 A.2d 973 (Pa. Super. 2003),] held that evidence that the defendant was in handcuffs and alone in a police cruiser did not indicate the presence of special elements of unfairness in a show-up that would "give rise to an irreparable likelihood of misidentification [] by the witnesses." **Id**[**.**] at 977. Clearly[,] the same rationale applies in th[is] case.

Suppression Court Opinion, 10/7/25, 5.

The most important factor for assessing the reliability of the instant out-of-court identification, as addressed above, was the victim's ability to observe the person who stole her car. The suppression court's factual finding that the victim was able to view Appellant in her car upon the removal of a mask that he had been wearing is supported by the record before us. Ms. Dale testified that she was able to look at him for "[a] few seconds" to "[m]aybe a minute" before he drove off in her car. N.T. Suppression Hearing, 5/2/23, 41. She noted that, while Appellant had been wearing a mask, he had "pulled it up to

- 11 -

start the car," *i.e.*, he pulled up the mask to reveal his face in her presence. *Id.* She confirmed that she was able to see him "very clearly." *Id.* She explained that she was able to recognize him at the show-up identification because "he had a twist in his hair" and she recognized him by "his skin complexion and his looks." *Id.* We thus start our review of Appellant's arguments cognizant that the suppression court's finding that the victim had an adequate opportunity to view Appellant at the time of the crime is binding upon us. *See Rosario*, 248 A.3d at 607-608.

As for the other three factors addressed in *Milburn* that the suppression court found in the Commonwealth's favor, we see no reasons to fault the suppression court's determinations. While the victim did not explicitly address the "degree of her attention" at the show-up identification, the court's finding of a "high" degree of attention at that time was a reasonable inference to derive from the victim's testimony suggesting that she was singularly focused on the person in her car when she realized he had entered the car and was trying to drive it away. *See* N.T. Suppression Hearing, 5/2/23, 39 (the victim: "The light was on, so I walked to the door because he was trying to start the car."). The findings as to the remaining factors were explicitly supported by the record. The victim's use of the phrase, "That's him," *id.* at 43, at the show-up identification demonstrated the certainty of her identification and the record reflected that the time between the crime and the out-of-court identification was not of a length that would call the victim's identification into question. *See id.* at 11 (Officer Kane testifying that he responded to the

- 12 -

report of the theft "at around 7:15 p.m."); *id.* at 13, 16 (Officer Kane testifying that he found the victim's car at around 8:20 p.m. on the same evening); *id.* at 22 (Officer Kane testifying that the victim "came to make an identification" about fifteen to twenty minutes after other officers placed Appellant in a patrol car).

To the extent that Appellant begins with an assertion that the Commonwealth did not carry its burden at the suppression hearing without presenting the testimony of additional officers who were present at the show-up identification, *see* Appellant's Brief, 25-26, he does not cite to any argument in support of the claim that was presented to the suppression court and does not identify a ruling by the court on a related theory for suppression. As Appellant did not make that argument at the suppression hearing, *see* N.T. Suppression Hearing, 5/2/23, 48-51 (defense arguments for suppression limited to supposed lack of independent basis for out-of-court identification and supposed lack of probable cause for arrest), it is waived for purposes of our review.[2] *See Commonwealth v. Little*, 903 A.2d 1269, 1272-73 (Pa.

---

[2] Even if we could address the substantive merits of this part of his suppression claim, Appellant fails to cite any legal authority to support a requirement that additional officers had to testify. At most, he refers us to evidence from the *trial* record to support an argument that the procedures used at the show-up identification were unreasonably suggestive. *See* Appellant's Brief, 26 n.5 ("The trial evidence demonstrates that the procedures used were clearly and unreasonably suggestive."). Under our controlling standard of review, however, it is not permissible for us to consider evidence beyond the suppression record upon reviewing the instant suppression claims. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013) (narrowing our scope of review of suppression court rulings to the evidence presented at the suppression hearing).

Super. 2006) ("appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories for relief may be considered on appeal."); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Appellant's arguments below asserting that the out-of-court identification process was unduly suggestive were limited to the following remarks:

> The -- the out-of-court identification was unduly suggestive in that police showed my client to the witness when she already had stated that she could not identify -- she did not see the face of the driver, and that resulted in identification.
>
> And my client was not wearing black clothing, as Your Honor could see in the video, is wearing a distinctive hat. He was wearing blue pants and gray -- I'm sorry -- blue shirt and gray pants. We've heard testimony that a flash was given for Black males wearing all black. And then, now today, additionally, we hear that the complainant has different testimony because, of course, memory fades, Your Honor. And she -- as she stated, she thought he had the same clothing on even though it was distinctly different as the officer testified.
>
> Now, of course, seeing my client here in the defendant's chair, there aren't many people that she could point to to think, okay, is this the person that is the defendant that I'm supposed to be identifying? And that's the reason, Your Honor, that the out-of-court identification made that day was unduly suggested when my -- as we heard testimony from the officer that my client was in cuffs -- could she -- he was -- she, the complainant, was told by officers that this is the person that was found in your vehicle and unduly tainted the identification. It was unduly suggestive, and the Commonwealth would need to show that there's an independent basis for her to be iden- -- able to identify my client, or the in-court identification should be suppressed as well.

- 14 -

> Here, Your Honor, I would argue that there is no independent basis. My client -- she does not know my client. Complainant stated that she had never met my client before and she hadn't seen him since, and, therefore, since the out-of-court identification was unduly suggestive in taint -- it tainted the in-court identification, and it must be -- both must be suppressed.

N.T. Suppression Hearing, 5/2/23, 49-51. The above-stated remarks set the outer bounds of Appellant's suppression claim and focused on the victim's supposed inability to see the driver's face, the differences in Appellant's clothing at the time of his arrest as opposed to the victim's description of his clothes at the time of the crime as "black hoodie and black pants," *id.* at 44, the fact that Appellant was in handcuffs at the time of the out-of-court identification, and an assertion that the police had told the victim that Appellant was a person that was found in her car.

As for Appellant's argument that suppression should have been granted because he was led out of the police car in handcuffs for the "one-on-one confrontation" leading to the out-of-court identification, he "agrees that an on-the-scene identification where a suspect is shown to a complainant while handcuffed and emerging from a police car does not arise to 'special elements of unfairness.'" Appellant's Supplemental Brief, 3; *see also* Appellant's Brief, 27 ("While one-on-one confrontations are not, in themselves, unduly suggestive, they are subject to suppression when combined with other special elements of unfairness"). As a result, we do not need to review those factors in isolation and may review whether the remaining arguments demonstrated a cause of undue suggestiveness overlooked by the suppression court. *See* Appellant's Supplemental Brief, 3 ("However, the suppression court's

- 15 -

reasoning does not account for the plethora of other unfair circumstances implicated in this case."). We thus turn to Appellant's specific assertions that: (1) "the police knew Appellant did not match the complainant's description of any of the four to six perpetrators but nonetheless brought [the] complainant to identify him;" (2) the police "showed Appellant to the complainant after first having her identify her [then]-recovered car and its contents;" and (3) the police conducted the show-up identification "knowing she had told them she did not see the one who drove away." Appellant's Brief, 26-27.

As for the last of those three arguments, Appellant directs us to testimony where Officer Kane "conceded that the [victim] may have stated at that time that she did not see the faces of the people who jumped into the car" and suggests that suppression should have been granted where the police did not seek "an alternative method of identification" in light of that testimony. Appellant's Brief at 30, *citing* N.T. Suppression Hearing, 5/2/23, 26; Appellant's Reply Brief, 3-5. This part of Appellant's claim improperly asks us to re-weigh the testimony presented below to conclude that the victim did not see the face of the person who drove away in her car where the suppression court found that the victim "was able to view [Appellant] at the time of the crime when he removed his mask in the car prior to driving away." Suppression Court Opinion, 10/7/25, 5. "[A]s fact finder, it is within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony. The factfinder is free to believe

- 16 -

all, some, or none of the evidence presented." *Commonwealth v. Griffin*, 785 A.2d 501, 505 (Pa. Super. 2001) (citation omitted).

Here, the victim testified that she was "very clearly" able to see Appellant in the driver's seat of her car before he drove away, and, at that time, "[h]e had his mask up." N.T. Suppression Hearing, 5/2/23, 41. The record thus supports the suppression court's finding that the victim was able to see Appellant's face at the time that he drove away, and that finding is binding on this Court. We must decline Appellant's invitation to re-weigh the victim's credibility. *See Griffin*, *supra* at 505.

The portions of Appellant's argument alleging that suppression should have been granted because the police "showed Appellant to the complainant after first having her identify her [then]-recovered car and its contents" or conducted the show-up identification in the presence of the stolen car are waived as they were based on a different theory than the argument presented to the suppression court. Appellant's Brief, 26-27; *see also* Appellant's Supplemental Brief, 3 ("having the complainant identify Appellant while he stood next to **her** stolen car immediately after she was asked to identify the car") (emphasis in original; footnote omitted). The argument below was that suppression should have been granted because the victim "was told by officers that [Appellant wa]s the person that was found in her car." N.T. Suppression Hearing, 5/2/23, 50. The claim below was not the same as the one presently argued on appeal that suppression should have been granted because the victim identified her stolen car and its contents before the show-up

identification was conducted and that the show-up identification was unduly suggestive because it occurred in the presence of the stolen car. These portions of Appellant's argument are thus unpreserved and, accordingly, waived.[3] *See Little*, 903 A.2d at 1272-73.

Appellant also argues that suppression should have been granted because his clothes, at the time of his arrest, did not match the victim's description of his clothes either at the time of the crime or at the time of the show-up identification. *See* Appellant's Brief, 26, 32-33; Appellant's Reply Brief, 5; Appellant's Supplemental Brief, 3, 7. The suppression court does not specially address this part of Appellant's claim in its opinion, but we would agree that it was adequately preserved.

Nonetheless, this argument is meritless because Appellant fails to provide a cogent legal theory for how inconsistencies with the victim's recollections of his clothing rendered the show-up identification unduly suggestive. It is axiomatic that testimonial inconsistencies go to the weight of evidence, not its admissibility. *See Commonwealth v. McCrae*, 832 A.2d

---

[3] In his opening brief, Appellant referenced in passing that he was wearing a "COVID mask" at the time of the out-of-court identification. Appellant's Brief, 28. Appellant cited that fact, seemingly for the first time in his reply brief, as another example of a "special element of unfairness" in the out-of-court identification process. Appellant's Reply Brief, 6. By waiting to raise this argument for suppression in his reply brief, Appellant waived this argument for purposes of our review. *See Commonwealth v. Collins*, 957 A.2d 237, 259 (Pa. 2008) ("A claim is waived if it is raised for the first time in a reply brief."). Moreover, the argument is waived where it was never preserved in the arguments made to the suppression court. *See* N.T. Suppression Hearing, 5/2/23, 49-51; *Little*, 903 A.2d at 1272-73; Pa.R.A.P. 302(a).

1026, 1035 (Pa. 2003) (witness's testimonial inconsistencies created question of weight to be afforded testimony rather admissibility). That Appellant was no longer wearing clothes that matched what the victim remembered him to be wearing at the time of the crime or the show-up identification did not logically make the out-of-court identification itself unduly suggestive and presented merely a weight issue for a fact finder to consider at the adjudication hearing. **See Commonwealth v. Sherwood**, 982 A.2d 483, 498 (Pa. 2009) (rejecting argument that prior bad acts evidence should have been excluded because the witness who was the conduit for the evidence "was an unreliable witness" and noting that the argument went to the weight of the evidence and not its admissibility). In any event, the fact that Appellant's clothes were different than an initial description given by the victim could be explained by the fact that Appellant had an hour to change clothes between the time of the crime and Officer Kane's discovery of him driving the stolen car. That issue was properly left to be decided by the fact finder at the adjudication hearing.

To the extent that Appellant preserved his appellate arguments for suppression of the out-of-court identification, he failed to demonstrate special elements of unfairness in his show-up identification at issue. To the contrary, under the totality of the circumstances, particularly the evidence that the victim had ample opportunity to see Appellant's face and the proximity in time between the crime and the show-up identification, we find that the

suppression court appropriately permitted admission of the out-of-court identification evidence.

Appellant asserts that the victim's in-court identification should have been suppressed "as it was the fruit of the unduly suggestive out-of-court identification." Appellant's Brief, 34. He also alleges that the in-court identification should have been suppressed because "six months elapsed between the crime and the in-court identification at the suppression hearing." *Id.* at 36. The assertion about the time lapse between the crime and the in-court identification rendering the in-court identification inadmissible is waived for our purposes because it was never presented to the suppression court. *See Little*, 903 A.2d at 1272-73; Pa.R.A.P. 302(a). At the hearing below, Appellant only sought the suppression of the in-court identification on the basis that it was tainted by the supposed flaws in the out-of-court identification. *See* N.T. Suppression Hearing, 5/2/23, 50-51 ("since the out-of-court identification was unduly suggestive in taint -- it tainted the in-court identification, and it must be -- both must be suppressed."). As we have already determined that the out-of-court identification was properly admitted, Appellant's preserved challenge with respect to the in-court identification must be rejected as meritless. *See Commonwealth v. DeJesus*, 860 A.2d 103, 113 (Pa. 2004) (explaining that where an appellant fails to establish that an out-of-court identification was impermissibly tainted, it is not necessary for the reviewing court to address the derivative assertion that an in-court identification should have been suppressed).

- 20 -

In his last claim, Appellant challenges the sufficiency of the evidence sustaining his adjudication for robbery of a motor vehicle. *See* Appellant's Brief, 37-45. He reasons that because the evidence failed to prove that he took the victim's car through the use of force, there was insufficient evidence to prove robbery of a motor vehicle. *Id.* He alleges that the evidence only proved, at most, the taking of an unattended car. *Id.* at 37, 44.

We must address this challenge under the following well-settled standard of review:

> In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at [a dispositional hearing], together with all reasonable inference therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the [accused act] beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact[ ]finder is free to believe all, part[,] or none of the evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the [juvenile's] innocence, but the question of any doubt is for the [fact finder] unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*In re T.B.*, 11 A.3d 500, 504 (Pa. Super. 2010) (citation omitted); *see also In re B.S.*, 831 A.2d 151, 155 (Pa. Super. 2003) ("In order to sustain an adjudication of delinquency, the due process clause of the United States Constitution requires that the Commonwealth present evidence that, when

viewed in the light most favorable to the Commonwealth, is sufficient to establish that the juvenile committed the accused act beyond a reasonable doubt.").

Pursuant to our Crimes Code, a person commits the crime of robbery of a motor vehicle "if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S. § 3702(a). Given the placement of Section 3702 in the section of the Crimes Code pertaining to robbery and legislative history reflecting that section was intended to criminalize the conduct known as "carjacking," a divided panel of this Court interpreted the statute to also require the following elements:

> (1) the stealing, taking[,] or exercise of unlawful control over a motor vehicle; (2) from another person in the presence of that person or any other person in lawful possession of the vehicle; and (3) the taking must be accomplished by the use of force, intimidation[,] or the inducement of fear in the victim.

*Commonwealth v. George*, 705 A.2d 916, 919-20 (Pa. Super. 1998). Appellant contends that the evidence did not establish the third element, citing the victim's testimony that Appellant did not threaten or "put hands on" her to gain access to her car. *See* Appellant's Brief, 39, *citing* N.T. Dispositional Hearing, 5/7/24, 30.

We begin our assessment of Appellant's claim by setting forth the evidence introduced at the dispositional hearing. The victim, Ms. Dale, testified that she was delivering packages for Amazon at the time of the crime. *See* N.T. Dispositional Hearing, 5/7/24, 6. Shortly before the taking of her

car, she had mistakenly taken a wrong package to a house as she noticed "some kids … trying to break into somebody's car." *Id.* at 8. She put the "wrong package" on the front seat of her car, opened the car's trunk by using "the trunk thing … on the door," retrieved the correct package from her trunk, and then brought that package to a nearby house. *Id.* at 10. When she put the correct package down, she noticed that the same group of "kids" she had noticed before were "branching" around her car. *Id.* Appellant then entered her car. *See id.* at 10-12. The victim returned to the car and "was trying to open" the passenger door; she agreed that she was "tugging on the door handle" for "a few seconds" before Appellant drove off in the car. *Id.* at 12-14. As Appellant notes in his argument, the victim agreed, on cross-examination, that Appellant did not threaten her or "put hands on" her "to gain access to the vehicle." *Id.* to 30-31.

Appellant maintains that "there was no evidence that the car was taken by even the slightest force." Appellant's Brief, 37. The Commonwealth, on the other hand, argues that "even a slight use of force suffices, provided that it is perceptible to the victim," comparing the difference between a purse-snatching and a pickpocketing. Appellee's Brief, 17. The Commonwealth asserts that the evidence was sufficient for robbery of a motor vehicle where the victim "had returned to her car and was actively attempting to re-enter it when [Appellant] drove away with it." *Id.* at 18.

The issue at hand turns on the force necessary to commit the offense. In *Commonwealth v. Jones*, 771 A.2d 796 (Pa. Super. 2001), a defendant

- 23 -

stole a pickup truck while the victim was standing up in the back of the pickup. *See id.* at 797. Jones drove off in the truck when the victim yelled at him. *See id.* Much like Appellant in this case, Jones tried to argue that the evidence was not sufficient to establish proof of force. *See id.* In response, we stated:

> A pickpocket does not commit robbery, as the victim is unaware of the contact; the taking is thus not accomplished by force. A purse-snatcher, however, is guilty of robbery as the victim is aware of the force. There may be no force directed at the purse-snatch victim; indeed, the snatcher may not look at the victim any more than [Jones] looked at [his victim], but the taking is still forcible.

*Jones*, 771 A.2d 799 (citations omitted). Consistent with the rejection of the sufficiency challenge in *Jones*, it is the victim's awareness of the taking— rather than the physical action directed toward the victim or the victim's manifestation of resistance—that determines whether it is a forcible taking.

As we explained in *Jones*, "Force is that of which the victim ***is aware*** and by reason of that force, is compelled to part with his property. … We decline to minimize the seriousness of the offense because the victim sensibly did not manifest more than verbal resistance." ***Id***. at 799 (emphasis added). In other words, as the statute dictates, robbery of a motor vehicle must occur "in the presence of" a person "in lawful possession of the motor vehicle." 18 Pa.C.S. § 3702(a). The force used, however slight, is sufficient if manifested in the presence of and knowledge of the victim.

Critical to our resolution of the instant matter is that, in *Jones*, as here, the theft was not of an unattended automobile but of a car whose owner was

in plain sight and who was directly victimized by the robbery of her motor vehicle: Appellant drove away as the victim was tugging on the door handle of her car to reassert her control of the vehicle. The victim in **_Jones_** and the victim in the instant case were both in physical contact with their vehicles at the moment someone drove off in their vehicles. Because the force was sufficient in **_Jones_**, it must be equally sufficient in the instant case since the victim was actively attempting to regain control of her vehicle by tugging on the car's door handle at the moment Appellant drove away rather than just offering verbal resistance like the victim in **_Jones_**. **_See, e.g., Commonwealth v. Jackson_**, 2023 WL 8254877, *2 (Pa. Super., filed Nov. 29, 2023) (finding evidence sufficient for robbery of a motor vehicle where Jackson "used force by accelerating and reversing" the victim's truck to steal it while the victim clung to the door) (unpublished memorandum cited for persuasive value pursuant to Pa.R.A.P. 126(b)(2)).

Viewing the evidence in the light most favorable to the Commonwealth, we find Appellant's challenge to the sufficiency of the evidence to be without merit. Accordingly, we affirm the dispositional order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/22/2025</u>